Betty VERBA, Plaintiff–Appellee,

v.

OHIO CASUALTY INSURANCE CO., Defendant–Appellant,

and

The United States of America, Defendant–Appellee.

No. 86–3803.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 11, 1987.

Decided July 11, 1988.

Rehearing Denied Sept. 12, 1988.

William T. Monroe, Monroe, Zucco & Kaselak, George C. Zucco (argued), Cleveland, Ohio, for Ohio Cas. Ins. Co.

Carolyn W. Allen, Asst. U.S. Atty., Cleveland, Ohio, for U.S.

Lawrence J. Rich, Zashin, Rich & Sutula, Cleveland, Ohio, for Verba.

Before LIVELY, MILBURN and RYAN, Circuit Judges.

RYAN, Circuit Judge.

This lawsuit is a controversy about the constitutional sufficiency of the statutory notice given to a judgment creditor lienholder of a scheduled Internal Revenue Service tax sale of real property.

Betty Verba filed an action against the Ohio Casualty Insurance Company and the United States of America seeking

—A declaratory judgment sustaining the constitutionality of 26 U.S.C. §§ 6335(b), and 6339(c), and

—A determination that Ohio Casualty's judgment lien, held on property purchased by plaintiff Verba at an Internal Revenue Service tax sale, was extinguished.

The district court held that:

—The statutory notice provision, 26 U.S.C. § 6339(c), is constitutional, and

—Ohio Casualty's judgment lien upon Verba's property has been extinguished.

Pursuant to its findings, the district court entered summary judgment in favor of the United States and Verba from which Ohio Casualty now appeals.

We hold, for the reasons stated hereafter, that:

—Ohio Casualty's judgment lien upon real estate in question constitutes a property interest for the purposes of the due process clause of the fifth amendment, and

—The notice by publication and posting as required by § 6335(b) was not, under the circumstances of this case, reasonably calculated to reach Ohio Casualty and therefore, the notice was constitutionally insufficient, and

—The judgment creditor lien of Ohio Casualty has not been extinguished by operation of § 6339(c).

Therefore, we reverse.

## II.

In May of 1974, the Internal Revenue Service made tax penalty assessments against Fred Parsons and Kay E. Parsons. In September of 1974, the government filed notices of a federal tax lien against each taxpayer with the Cuyahoga County Recorder. The notices were refiled in May of 1979. In February of 1976, Ohio Casualty obtained a judgment against the Parsons for $41,000. Ohio Casualty filed a certificate of judgment with the Cuyahoga County Recorder in December 1980.

On June 24, 1981, the IRS seized the Parsons' interest in real estate located at 8286 Wright Road, Broadview Heights, Cuyahoga County, Ohio, which had a value of $63,000. The Parsons' unpaid tax liabilities

amounted to $129,218.38. It is undisputed that at that time National City Bank had a lien senior to the government's for $20,686.16.

On February 3, 1982, the IRS notified the Parsons that the property would be sold at a public auction on February 18, 1982, pursuant to 26 U.S.C., § 6335. On February 4, 1982, and February 5, 1982, the IRS published notices of the sale in The Cleveland Plain Dealer and The Sun, newspapers published and having general circulation in Cuyahoga County. Notices of the sale were posted at three Cuyahoga County addresses.

On February 18, 1982, the property was sold to Betty Verba for $30,300. The redemption period expired on June 25, 1982, and the IRS delivered deeds to Verba conveying the Parsons' interest in the property to her. Pursuant to 26 U.S.C. § 6339(c)[1] the delivery of the deeds discharged Ohio Casualty's lien.

The somewhat convoluted procedural history of this litigation follows.

On June 8, 1982, after the tax sale but before conveyance of the property to Verba, National City Bank initiated a foreclosure action against the Parsons in the Court of Common Pleas of Cuyahoga County, Ohio. Verba, the Government, and Ohio Casualty, were also named as the defendants in that action. The state court determined that Ohio Casualty's lien was not discharged because constructive notice as provided for in 26 U.S.C. § 6335(b) was constitutionally inadequate. Verba then filed a cross-claim against the government seeking indemnification for any amount Ohio Casualty might be entitled. The United States removed this action to the United States District Court for the Northern Dis-

trict of Ohio (C 84–591), and thereafter moved to dismiss Verba's claim against it.

Verba then filed this declaratory judgment action (No. 84–3937), in the district court seeking a declaration that the notice given to Ohio Casualty was constitutionally adequate and that its lien, therefore, was extinguished. Ohio Casualty was initially named as a defendant and subsequently Verba amended her complaint to add the United States as a defendant. This action was consolidated with the removed case.[2] Thereafter, the government filed a motion for summary judgment in this case. The district court granted this motion because it found that Ohio Casualty's judgment lien was a "general" rather than "specific" lien and thus not a property interest entitled to due process protection under the fifth amendment. Therefore, the court sustained the constitutionality of 26 U.S.C. §§ 6335(b), 6339(c) as applied and held that Ohio Casualty's judgment lien had been extinguished.

### III.

The fifth amendment forbids the federal government from depriving persons of property without due process of law. Initially, we must determine whether the judgment lien held by Ohio Casualty is a significant, constitutionally protected property interest. "[P]roperty interests 'are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Parratt v. Taylor,* 451 U.S. 527, 529 n. 1,

---

1. That section provides:

   (c) **Effect of junior encumbrances.**—A certificate of sale of personal property given or a deed to real property executed pursuant to section 6338 shall discharge such property from all liens, encumbrances, and titles over which the lien of the United States with respect to which the levy was made had priority.

2. The district court dismissed the removed case as against the United States and remanded the case against the remaining defendants to the

state court because the state court's lack of jurisdiction over the United States prevented it from being properly removed and mandated that that portion of the case be dismissed. *Lambert Run Coal Co. v. Baltimore & O.R.R.,* 258 U.S. 377, 382, 42 S.Ct. 349, 351, 66 L.Ed. 671 (1922); *Bancohio Corp. v. Fox,* 516 F.2d 29, 32 (6th Cir.1975). Since Verba's appeal from the disposition of that case has been dismissed pursuant to her own motion, it is no longer relevant to this appeal.

101 S.Ct. 1908, 1910, n. 1, 68 L.Ed.2d 420 (1981) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). However, "federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30 (1978).

First, we turn to Ohio law to determine the nature of Ohio Casualty's lien which it obtained by filing a certificate of judgment pursuant to Ohio Rev.Code § 2329.02.[3] Although there is no clear pronouncement from the Supreme Court of Ohio on the nature of such an interest, we find that the decisions of the Ohio Courts of Appeals provide ample guidance. Under Ohio law "[t]he lien acquired by filing a certificate of judgment in accordance with R.C. § 2329.02 is a statutory lien which is effective from the date of filing on all real estate located in the county." *Feinstein v. Rogers*, 2 Ohio App.3d 96, 97–98, 440 N.E. 2d 1207, 1209 (1981) (citing *Maddox v. Astro Investments*, 45 Ohio App.2d 203, 343 N.E.2d 133 (1975)).

R.C. 2329.02 is intended to create a specific lien upon the lands and tenements of the judgment debtor within the county at the time there is filed in the office of the clerk of the court of common pleas of such county a certificate of judgment. The lien applies specifically to all such property identified as belonging to the debtor at the time of the filing of the certificate and may be enforced as a specific lien pursuant to R.C. 2323.07 by a foreclosure action.

*Feinstein*, 2 Ohio App.3d at 98, 440 N.E.2d at 1210.

The district court's determination that the lien was a general lien which conferred no interest in a particular piece of property was erroneously based upon cases[4] construing the predecessor to § 2329.02, which the parties agree is significantly different from § 2329.02 in its current form. We are satisfied that under O.R.C. 2329.02 as interpreted by the Ohio Courts of Appeals, a judgment lien is specific and attaches at the time the certificate of judgment is filed within a county to all real estate owned by the judgment debtor within that county. Therefore, it is in this context that we turn to the question of whether Ohio Casualty's judgment lien is a constitutionally protected property interest.

### IV.

Although the precise issue of whether a specific judicial lien is a property interest protected by due process has not been addressed by the Supreme Court or in any of the circuits, the Supreme Court held in *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), that a mortgagee's interest in real property is a significant property interest for due process purposes. 462 U.S. at 798, 103 S.Ct. at 2711. The mortgagee's interest in *Mennonite* was, like Ohio Casualty's lien, a specific lien with priority over subsequent claims or liens attaching to the property. *Id.* Unlike this case, the mortgagee's interest in *Mennonite* was senior to the tax lien and took priority over most claims antedating the execution of the mortgage. However, we find these distinctions are not controlling. Our task is not, as the appellee suggests, to determine if Ohio Casualty's interest is as "significant" as that of a purchase money mortgagee. Rather, it is to deter-

---

3. That section, in pertinent part, provides:

   Any judgment or decree rendered by any court of general jurisdiction, including district courts of the United States, within this state shall be a lien upon lands and tenements of each judgment debtor within any county of this state from the time there is filed in the office of the clerk of the court of common pleas of such county a certificate of such judgment, setting forth the court in which the same was rendered, the title and number of the action, the names of the judgment credi-

   tors and judgment debtors, the amount of the judgment and costs, the rate of interest, if the judgment provides for interest, and the date from which such interest accrues, the date of rendition of the judgment, and the volume and page of the journal entry thereof.

4. *Bigelow v. Renker*, 25 Ohio St. 542 (1874); *Moore v. Rittenhouse*, 15 Ohio St. 310 (1864); *Corwin v. Benham*, 2 Ohio St. 36 (1853); *Myers v. Hewitt*, 16 Ohio St. 449 (1847).

mine whether a judicial lien is one of the many types of protected property interests, of which a purchase money mortgagee's interest is but one. We believe that Ohio Casualty's specific judicial lien is also a significant property interest entitled to the protections of the due process clause. We find support for this determination in other cases dealing with similar interests.

Recently, the Supreme Court has held that a creditor's unsecured cause of action against an estate is a property interest for due process purposes. *Tulsa Professional Collection Serv., Inc. v. Pope*, — U.S. —, —, 108 S.Ct. 1340, 1344, 99 L.Ed.2d 565, 575 (1988). The Court explained that:

> [L]ittle doubt remains that such an intangible interest is property protected by the Fourteenth Amendment. As we wrote in *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 [102 S.Ct. 1148, 1153, 71 L.Ed.2d 265] (1982), this question "was affirmatively settled by the *Mullane* case itself, where the Court held that a cause of action is a species of property protected by the Fourteenth Amendment's Due Process Clause." In *Logan*, the Court held that a cause of action under Illinois' Fair Employment Practices Act was a protected property interest, and referred to the numerous other types of claims that the Court had previously recognized as deserving due process protections.

*Id.*

Additionally, the Supreme Court of Pennsylvania has held that a general judgment lien [5] was a property interest for due process purposes. *Tax Claim Bureau v. Estate of Schumo (In re Upset Sale)*, 505 Pa. 327, 336, 479 A.2d 940, 944 (1984). Additionally, a second mortgagee has been found to possess a significant constitutionally protected property interest. *Mid–State Homes, Inc. v. Portis*, 652 F.Supp. 640 (W.D.La.1987). And, the Eleventh Circuit has held that a mortgagor's equity of redemption and statutory right to redeem created under Alabama law are constitu-

tionally protected property interests. *Federal Deposit Ins. Corp. v. Morrison*, 747 F.2d 610, 614 (11th Cir.1984), *cert. denied*, 474 U.S. 1019, 106 S.Ct. 568, 88 L.Ed.2d 553 (1985). These interests, like Ohio Casualty's specific lien, are intangible nonpossessory interests attached to a particular piece of property, and all are constitutionally protected property interests within the meaning of the due process clause of the fifth amendment.

## V.

■ We now turn to a determination of the type of notice constitutionally due Ohio Casualty prior to the tax sale. It is undisputed that the tax sale and the subsequent conveyance of the deeds operated to extinguish Ohio Casualty's lien. 26 U.S.C. § 6339(c), *supra*, at n. 1. However, the only means undertaken to notify Ohio Casualty of the sale were publication and posting as provided for in 26 U.S.C. § 6335(b), even though Ohio Casualty's name and address were readily ascertainable from the Cuyahoga County Recorder after its certificate of judgment was filed in accordance with Ohio Rev.Code § 2329.02. Ohio Casualty asserts that under these circumstances the notices do not comport with the requirements of procedural due process. For the following reasons, we agree.

In *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), the Supreme Court noted that, "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. at 314, 70 S.Ct. at 657. Thereafter, the Court found that notice by publication of an action to settle the accounts of a common trust fund with respect to beneficiaries whose names and addresses were known, was constitutionally inadequate

---

5. Although the lien involved was considered "general" under Pennsylvania law, it was created under a statute which provided, as Ohio Revised Code § 2329.02 does, that a judgment entered on the record operates as a lien upon all real property of the debtor in that county. 505 Pa. at 334, 479 A.2d at 943 (citing 42 Pa.Cons. Stat. §§ 4303(a), (b), 1722(b) & 2737(3)).

"not because in fact it fail[ed] to reach everyone, but because under the circumstances it [was] not reasonably calculated to reach those who could easily be informed by other means at hand." *Id.* at 318–19, 70 S.Ct. at 659–60.

Later, in *Mennonite*, the Supreme Court held that:

[s]ince a mortgagee clearly has a legally protected property interest, he is entitled to notice reasonably calculated to apprise him of a pending tax sale. When the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service. But unless the mortgagee is not reasonably identifiable, constructive notice alone does not satisfy the mandate of *Mullane.*

462 U.S. at 798, 103 S.Ct. at 2711 (citation omitted).

The Court explained that:

[n]either notice by publication and posting, nor mailed notice to the property owner, are means "such as one desirous of actually informing the [mortgagee] might reasonably adopt to accomplish it." *Mullane*, 339 U.S., at 315 [70 S.Ct. at 657]. Because they are designed primarily to attract prospective purchasers to the tax sale, publication and posting are unlikely to reach those who, although they have an interest in the property, do not make special efforts to keep abreast of such notices. Notice to the property owner, who is not in privity with his creditor and who has failed to take steps necessary to preserve his own property interest, also cannot be expected to lead to actual notice to the mortgagee.

462 U.S. at 799, 103 S.Ct. at 2711 (citations omitted).

■ Once Ohio Casualty filed its certificate of judgment with the Cuyahoga County Recorder, its identity and address became a matter of public record. Ohio Rev. Code § 2329.02. Therafter, due process required that Ohio Casualty be given more than mere constructive notice as provided for in 26 U.S.C. § 6335(b) before its protected property interest was extinguished by a tax sale of the property. As in *Mennonite,* personal service or mailed notice is constitutionally required to be provided to a specific judgment lienholder whose identity and address are a matter of public record. 462 U.S. at 799, 103 S.Ct. at 2711. Because the notice in accordance with 26 U.S.C. § 6335(b) was constitutionally inadequate, we hold that Ohio Casualty's lien was not extinguished pursuant to 26 U.S.C. § 6339(c). However, we wish to clearly emphasize our belief that this conclusion does not entitle Ohio Casualty to have its lien elevated in priority over that of the United States. Although it is for the district court to determine the precise procedures by which Ohio Casualty's rights will be vindicated, the remedy should provide Ohio Casualty with no interest greater than that which it possessed when the foreclosure proceedings were first instituted.

## VI.

■ Finally, we address Verba's contention that *Mennonite* should be applied nonretroactively. Until recently this circuit applied Supreme Court decisions retroactively if the Court had applied its decision to the case before it. *Smith v. General Motors Corp.*, 747 F.2d 372 (6th Cir.1984). However, in *Thomas v. Shipka*, 829 F.2d 570, 571 n. 1 (6th Cir.1987), we concluded that "*Smith* can no longer be the law in this circuit in light of the more recent Supreme Court pronouncements." Thereafter, this court has turned to the factors set forth in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), to determine whether a Supreme Court decision should be applied nonretroactively. *Thomas*, 829 F.2d at 573.

In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that "we must ... weigh the merits and

demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

*Chevron Oil Co. v. Huson,* 404 U.S. at 106–07, 92 S.Ct. at 355–56 (citations omitted).

Because we find that *Mennonite* was an extension of *Mullane* rather than a case establishing a new principle of law, invoking the doctrine of nonretroactivity would be inappropriate. In *Mennonite,* the Court stated that "[t]his case is controlled by the analysis in *Mullane.*" 462 U.S. at 798, 103 S.Ct. at 2711. The standard used in *Mennonite* to determine if the notice was constitutionally adequate was taken directly from *Mullane.* 462 U.S. at 795, 103 S.Ct. at 2709. Additionally, the holding in *Mennonite*—that the constructive notice was inadequate as to a mortgagee whose name was a matter of public record—was clearly foreshadowed by the Supreme Court's decision in *Mullane.* A decision *"must* establish a new principle of law" to be applied nonretroactively. *Chevron Oil Co. v. Huson,* 404 U.S. at 106, 92 S.Ct. at 355 (emphasis added). Therefore, because we find that *Mennonite* did not establish a new principle of law we believe that nonretroactive application of *Mennonite* is inappropriate. Therefore, we find it unnecessary to review the last two factors set forth in *Chevron Oil Co. v. Huson.*

### VII.

We hold today that Ohio Casualty's specific judicial lien constitutes a property interest entitled to the protections of the due process clause. Since Ohio Casualty's identity and address were a matter of public record from the time the judgment certificate was filed with the Cuyahoga County Recorder, the constructive notice by publi-

cation and posting pursuant to 26 U.S.C. § 6335(b) was constitutionally inadequate. Because Ohio Casualty was not given proper notice, its interest in the property was not extinguished. Lastly, because *Mennonite* was merely an extension of the principle established in *Mullane,* and did not "establish a principle of new law," nonretroactive application of *Mennonite* is inappropriate.

Accordingly, the district court's judgment granting the government's motion for summary judgment is REVERSED.