**OMNIBANK ILIFF, N.A.,**
**Plaintiff–Appellant,**

**v.**

**John J. TIPTON, Executive Director, Department of Revenue, State of Colorado; Department of Revenue, State of Colorado; and Clarence Michael Powley, individually, Defendants–Appellees.**

**No. 91CA0663.**

Colorado Court of Appeals,
Div. III.

June 4, 1992.

Rehearing Denied Aug. 13, 1992.

Certiorari Denied Jan. 19, 1993.

Iwasaki & Pearson, P.C., Lannie Y. Iwasaki, James V. Pearson, Denver, for plaintiff-appellant.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Mark W. Gerganoff, Asst. Atty. Gen., Denver, for defendants-appellees.

Opinion by Judge REED.

Plaintiff, Omnibank Iliff, N.A., appeals the summary judgment entered in favor of defendants, the Department of Revenue, State of Colorado (Department) and its executive director, John J. Tipton. We reverse and remand for further proceedings.

This is an action pursuant to § 39–21–114(6), C.R.S. (1982 Repl.Vol. 16B) for damages which Omnibank claims it suffered from the Department's seizure and tax sale of assets upon which Omnibank held a security interest and from the disbursement of the surplus proceeds from the sale. Omnibank contends that the sale was illegal because it was not given notice thereof and that the Department wrongfully paid the surplus proceeds, i.e., those in excess of the tax liability owed the state, to the owner of the property, despite the Department's knowledge of Omnibank's entitlement to them.

The assets sold included eight trucks and a hydraulic crane. This equipment was used in a business operated by Spring Bay Constructors, Inc., but it was owned by Clarence M. Powley, the sole stockholder of Spring Bay.

The seizure in question occurred March 3, 1988, and was authorized by distraint warrants that were issued in January, February, and March of 1988 to sell Spring Bay's assets for its non-payment of withholding taxes. In conjunction with the seizure, the Department issued a notice for delinquent withholding taxes specifying the time and place of sale scheduled for March 17, 1988. As required by certain statutory directives for notice under § 39–21–114(2)(a), C.R.S. (1982 Repl.Vol. 16B), agents for the Department posted and published an announcement of the tax sale and personally served notice upon Spring Bay. No notice was ever given to Omnibank except by publication.

At the time of seizure, Omnibank had acquired an interest in the above described equipment by having made a loan on March 1, 1988, to Powley in exchange for which he executed and delivered a promissory note collateralized by a security agreement and a Uniform Commercial Code financing statement. The security documents covered the eight motor vehicles and the crane and indicated that the encumbrance thereunder constituted a first lien on the subject property.

The loan to Powley required that he pay off a prior indebtedness to another lender.

Accordingly, upon receipt of the loan proceeds, that lender transferred to Omnibank the eight motor vehicle titles which it held. This occurred on March 7, 1988, and Omnibank then forwarded the titles to the Arapahoe County Motor Vehicle Division to secure its first lien position.

Omnibank filed the financing statement in the office of the Arapahoe County clerk and recorder on March 10, 1988. Liens applicable to the motor vehicles were later submitted by Omnibank for filing in the public records of the Motor Vehicle Division in Adams County on March 24, 1988.

Prior thereto, and on March 3 and 4, 1988, agents for the Department had conducted searches for recorded leases and mortgages on the seized property at the clerk and recorder's office in Adams County and for financing statements filed against Spring Bay in the records at the Office of the Secretary of State. No recorded leases or mortgages were found, and the search likewise failed to disclose Omnibank's interest.

At no time between the seizure of the property on March 3, 1988, and the sale on the following May 31, did the Department search for liens on the vehicles through the title division of the state Department of Motor Vehicles. The Department conceded that such a search was required by its internal rules and procedures pertaining to seizures under distraint warrants for taxes.

On March 16, 1988, a voluntary petition in bankruptcy was filed by Spring Bay under Chapter 7 of the U.S. Bankruptcy Code. This required a cancellation of the sale that had been scheduled for March 17, 1988. The Department procured relief from the automatic stay on April 28, 1988, and on May 17, 1988, another sale was scheduled for May 31, 1988. However, Omnibank was not notified of the rescheduled sale either through the bankruptcy proceeding or by the Department, and it did not learn of the sale until after it was concluded. The sheriff's return of sale demonstrates that the total of the outstanding tax delinquencies were satisfied out of the sale proceeds, leaving a surplus balance of approximately $23,600.

On May 4, 1988, prior to the sale, Powley filed suit in Denver District Court against the Department claiming ownership of the seized property. Omnibank was not a party to that litigation. That suit was settled and compromised by the Department retaining an agreed amount in satisfaction of its tax lien, and by paying, on April 14, 1989, the surplus proceeds from the sale to Powley as owner, purportedly in accordance with the provisions of § 39–21–114(2)(b), C.R.S. (1982 Repl.Vol. 16B). This settlement was accomplished notwithstanding Omnibank's prior claims to the Department that the sale was illegal and its demand for the sale proceeds to the extent of its lien.

The trial court granted summary judgment in favor of the defendants finding, *inter alia:* a) that Omnibank was not an "owner or possessor" within the meaning of § 39–21–114(2)(a) and thus was not entitled to be notified at the time of seizure; b) that the provisions of § 39–21–114, C.R.S. (1982 Repl.Vol. 16B) relative to notification had been fully complied with notwithstanding the Department's failure to follow its own procedures; c) that, in any event, Omnibank cannot be considered a lienor without notice within the meaning of § 39–21–114(5), C.R.S. (1982 Repl.Vol. 16B) because the statute creating a prior lien for delinquent withholding taxes, § 39–22–604(7)(a) and (b), C.R.S. (1982 Repl.Vol. 16B), became part of Omnibank's security agreement by operation of law; d) that § 39–21–114(2)(b) did not, by its terms, require return of surplus proceeds from the sale of the property to Omnibank after the Department's lien had been satisfied.

## I.

■ Omnibank first contends on appeal that the district court erred in determining that it, as a secured lienholder, was not entitled to actual notice of the sale by virtue of § 39–21–114(5). We agree.

Section 39–21–114(2)(a), which governs the manner of selling property seized pursuant to warrants of distraint, requires that in addition to the required publication of sale, a written notice of seizure and sale be served upon the owner or possessor of the property. It states:

> The agent charged with the collection shall make or cause to be made an account of the goods or effects distrained, a copy of which, signed by. the agent making such distraint, *shall be left with the owner or possessor,* or at his usual place of abode with some member of his family over the age of eighteen years … *with a note of the sum demanded and the time and place of sale; and shall forthwith cause to be published a notice of the time and place of sale,* together with a description of the property to be sold, *in some newspaper of general circulation within the county wherein distraint is made* or, in lieu thereof and in the discretion of the executive director of the department of revenue, the agent shall cause such notice to be publicly posted at the courthouse of the county wherein such distraint is made, copies thereof to be posted in at least two other public places within said county. (emphasis supplied)

Under the procedure outlined in this section, a secured lienholder would receive only constructive notice of the sale by posting and publication. However, there is nothing whatever in this provision's language to imply that it would be the exclusive determinant of parties entitled to notice on impending sale. As urged by Omnibank, this subsection must be read in conjunction with, § 39–21–114(5) which preserves, in broad terms, the rights of lienholders as follows:

> Nothing in this section shall be construed to abrogate or diminish the rights of bona fide purchasers, lienors, or pledgees for value and without notice.

Because this subsection does not specify what procedural steps must be taken to accomplish its objectives, it must be construed as requiring, among other things, the type of notice that must be given to lienors for a valid tax sale of personal property pursuant to warrants for distraints. Under principles applicable to the construction of statutes, § 39–21–114(5) must be read in a constitutional manner.

When so read, it implicates the requirements of due process which the United States Supreme Court has interpreted to mandate enhanced notice in a variety of circumstances. *See Tulsa Professional Collection Services v. Pope*, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988); *BQP Industries Inc. v. State Board of Equalization*, 694 P.2d 337 (Colo.App.1984).

The supreme court held in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), and its progeny, that, in proceedings to foreclose a tax lien on property in which the name and address of a lienholder are readily ascertainable, constructive service, such as by publication and posting, is insufficient to satisfy constitutional requirements.

In *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), the supreme court interpreted *Mullane* to require that "notice by mail or the means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the ... property ... interest of any party ... if its name and address are reasonably ascertainable." Thus, the *Mennonite* court found that Indiana law, which provided for the sale of property for delinquent taxes with notice only by posting and publication and by certified mail to the owner, was constitutionally inadequate where a lienholder of record had not been sent notice either by personal service or by mail.

In holding that constructive notice was insufficient for due process purposes, the *Mennonite* court held that publication and posting are unlikely to reach those who, even though they have an interest in the property, do not make special efforts to stay abreast of such notices. The court also stated that personal service or mailed notice is required even though sophisticated creditors may have means at their disposal to determine whether tax sale proceedings are likely to be initiated. The court noted that the state is not relieved of its constitutional obligation because of a party's ability to take steps which will safeguard its interests. Finally, the court stated that a mortgagee's knowledge of a tax delinquency is not equivalent to the required notice of a pending tax sale.

*Mennonite* has been extended by at least one court to apply when property is sold under § 6335 of the Internal Revenue Code. *Verba v. Ohio Casualty Insurance Co.*, 851 F.2d 811 (6th Cir.1988). Under 26 U.S.C. § 6335(b), in addition to giving notice of seizure to the property owner, the IRS need only publish notice of sale in a newspaper of general circulation within the county where a seizure is made. According to the *Verba* court, this notice fails to satisfy due process as required by *Mennonite* if the name and identity of a junior lienholder are matters of public record.

There, the court held that because the IRS did not notify a junior lienholder by personal service or by mail of the pending tax sale, its interest in the property was not extinguished. Accordingly, it remanded the cause to the trial court to fashion a remedy to vindicate the lienholder's interest.

Our courts have followed *Mullane* in a variety of circumstances, requiring the state to provide notice before it may constitutionally deprive affected persons of property interests. *See Klingbeil v. State*, 668 P.2d 930 (Colo.1983); *Denver Welfare Rights Organization v. Public Utilities Commission*, 190 Colo. 329, 547 P.2d 239 (1976); *cf. Patterson v. Cronin*, 650 P.2d 531 (Colo.1982).

Based on the record before us, it appears that Omnibank did not know of the tax sale until after it took place. Prior to that time and after the adjournment of the initial sale because of the bankruptcy of Spring Bay, Omnibank had acted in a relatively prompt fashion and properly recorded its interest in the items seized by the Department. A reasonably diligent effort to search the files of the Motor Vehicle Division in Adams County upon the rescheduling of the sale, some 70 days after the initial seizure, would have disclosed Omnibank's lien. We can conceive of no valid reason to excuse the Department from doing so.

As held in *Mennonite,* and contrary to the trial court's determination, Omnibank, as a lienholder, was entitled to notice by mail or personal service of the tax sale. Furthermore, the fact that Omnibank might have taken steps to safeguard its interest by requiring Powley to file a bond is irrelevant to whether notice given by the Department was adequate in the circumstances. *Mennonite Board of Missions v. Adams, supra.*

Thus, the trial court erred in determining that constructive notice to Omnibank was all that was required and in granting summary judgment on behalf of the Department.

## II.

■ Omnibank also contends that the trial court erred in determining that § 39–21–114(2)(b), C.R.S. (1982 Repl.Vol. 16B), as a matter of law, permits the Department to pay the surplus proceeds from a tax sale to the owner of property with impunity despite conflicting and known claims of lienholders. We agree under the unique facts here.

Omnibank has conceded on appeal that because of Spring Bay's non-payment of withholding taxes, the Department, pursuant to § 39–22–604(7)(a), C.R.S. (1982 Repl. Vol. 16B), has a first and prior lien upon the distrained property and its sales proceeds. However, other defenses have been interposed by the Department in the trial court that were not determined because of the summary judgment. Accordingly, we elect to treat this contention for guidance to the trial court should the same issue arise during trial within the same factual context as here presented.

Section 39–21–114(2)(b), C.R.S. (1982 Repl.Vol. 16B) prescribes the application of proceeds of a tax sale of seized property in excess of the amount necessary to satisfy the Department's first lien and costs. It provides that any surplus proceeds remaining from the sale of property after the Department's lien has been satisfied "shall be returned to the owner, or such other person having legal right thereto...."

The trial court interpreted the statute to mean that the Department was not re-quired to make a legal determination of the relative rights of the owner and other persons asserting a claim to the proceeds. Thus, it concluded the Department acted properly and in compliance with statutory requirements by returning the surplus proceeds to Powley who was the owner of the property.

We disagree with this interpretation under the unique facts here. As we view the statute, the disjunctive language of § 39–21–114(2)(b) points out that any remaining surplus after a sale is to be paid to whomever is legally entitled thereto. This means the owner unless another person establishes a superior claim.

Whatever may be the duties of the Department under other circumstances, as to which we express no opinion here, the record discloses that the Department was embroiled in litigation with Powley concerning the ownership of the sale's proceeds with full knowledge of Omnibank's claims. This made it a very easy task for the Department to implead Omnibank and deposit the surplus proceeds for judicial determination in the ongoing litigation.

Thus, it was error for the trial court to determine that Powley had a right to the proceeds as a matter of law. Our interpretation here is also supported by § 39–21–114(5) of the statute which provides that it shall not be construed in such a way as to abrogate or diminish Omnibank's rights.

If it is determined on remand that Omnibank was legally entitled to the surplus proceeds and the Department refused to refund same to it, but distributed the money instead to Powley as claimed, then, in effect, the Department has wrongfully taken its property, and the latter is entitled to recover it pursuant to § 39–21–114(6), C.R.S. (1982 Repl.Vol. 16B).

The judgment is reversed, and the cause is remanded for further proceedings consistent with the views expressed herein.

METZGER and MARQUEZ, JJ., concur.