Howard S. LONG, Plaintiff–Appellant,

v.

Mike PIPPIN, Judy Pippin, Bonnie
Burke–Behr, and Paul C. Behr,
Defendants–Appellees.

No. 94CA2078.

Colorado Court of Appeals,
Div. IV.

Feb. 22, 1996.

Howard S. Long, pro se.

Arckey & Reha, L.L.C., John F. Reha, Littleton, for Defendants–Appellees.

Opinion by Judge MARQUEZ.

In this action to quiet title, plaintiff, Howard S. Long, appeals from a summary judgment entered in favor of defendants, Mike Pippin, Judy Pippin, Bonnie Burke–Behr, and Paul C. Behr. We affirm.

On March 12, 1993, the Internal Revenue Service (IRS) seized certain real property owned by plaintiff and located in Jefferson County, Colorado, for nonpayment of taxes. On April 15, 1993, when plaintiff was not at home, notices of sale were left at his residence "between the screen door and the post for the front door of his residence." That same day, notices of sale were delivered to plaintiff's residence via certified mail. In addition, notices of sale were published in the *Daily Journal.*

On May 3, 1993, plaintiff was present at a public auction held in Adams County, Colorado, during which bids were solicited for his property. Mike and Judy Pippin (Pippins) were the high bidders for property known as 4240 and 4260 Pierson Street, and Bonnie Burke–Behr and Paul C. Behr (Behrs) were the high bidders for property known as 4245 and 4255 Pierson Street.

At the auction, the respective properties were sold to the defendants, and corresponding certificates of sale issued. Following the expiration of the statutory redemption period, the IRS issued deeds to the Behrs and Pippins. Both deeds were duly recorded.

Plaintiff brought this action pursuant to C.R.C.P. 105 to quiet title to the properties. Defendants collectively filed an answer and counterclaim requesting that the court quiet title to the respective properties in their names.

The parties agreed to submit the matter on stipulations and filed cross-motions for summary judgment. By order dated November 4, 1993, and amended November 9, 1993, the court granted summary judgment in favor of defendants.

I.

■ Plaintiff contends that he was not properly served with the notices of sale. In support of this contention he argues that the service effected did not strictly comply with the relevant requirements of the Internal Revenue Code and that, even if there was such compliance, the methods of service used nonetheless violate the due process clause of the Fifth Amendment. We reject these arguments.

Summary judgment is appropriate when the pleadings and other relevant documents establish the absence of a triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board,* 901 P.2d 1251 (Colo.1995).

■ The general rule in the federal courts is that strict compliance with statutory provisions is required to validate tax sales. *Johnson v. Gartlan,* 470 F.2d 1104 (4th Cir.), *cert. denied,* 414 U.S. 865, 94 S.Ct. 122, 38 L.Ed.2d 85 (1973). Further, this appears to be the rule followed in the Tenth Circuit. *See, e.g., Bonacci v. United States,* 864 F.Supp. 1086 (D.Utah 1993).

However, in *Phelps v. Gates,* 40 Colo.App. 504, 580 P.2d 1268 (1978), a division of this court held that a property description in a published notice of sale which incorrectly identified the county of the property's location was nonetheless in "substantial compliance" with I.R.C. § 6335(b) and that the tax deed derived from the sale was valid.

Without resolving the potential conflict in these rulings we choose to assume, for purposes here, that the failure of the IRS to comply literally with "any single" requirement of I.R.C. § 6335 would warrant the invalidation of the sales at issue.

The requirements governing service of a notice of sale are found in I.R.C. § 6335. Section 6335(b) provides in pertinent part:

The Secretary shall as soon as practicable after the seizure of the property give notice to the owner, in the manner prescribed in subsection (a)....

Section 6335(a), in turn, provides:

[N]otice in writing shall be given by the Secretary to the owner of the property ... *or shall be left at his usual place of abode* or business if he has such within the internal revenue district where the seizure is made. (emphasis added)

It is undisputed that, as described above, notices of sale were left at plaintiff's residence. As this method of service does not deviate from the express dictates of § 6335(b), we hold that the trial court correctly concluded, as a matter of law, that service was proper within the purview of the Internal Revenue Code.

■ "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873 (1950). "The means employed [to give notice] must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Mullane*, 339 U.S. at 315, 70 S.Ct. at 657, 94 L.Ed. at 874.

■ Although the United States Supreme Court has noted "the impossibility of setting up a rigid formula as to the kind of notice that must be given," and that the "notice required will vary with circumstances and conditions," *Walker v. City of Hutchinson*, 352 U.S. 112, 115, 77 S.Ct. 200, 202, 1 L.Ed.2d 178, 182 (1956), it is clear that, "[w]here the names and post-office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency." *Mullane v. Central Hanover Bank & Trust Co., supra*, 339 U.S. at 318, 70 S.Ct. at 659, 94 L.Ed. at 875.

Plaintiff cites *Greene v. Lindsey*, 456 U.S. 444, 452–53, 102 S.Ct. 1874, 1879, 72 L.Ed.2d 249, 256–57 (1982), a case involving service of process on tenants in a public housing project in forcible entry and detainer actions. In *Greene*, the Supreme Court stated that "a State may ... conclude that in most cases, the secure posting of a notice on the property of a person is likely to offer that property owner sufficient warning of the pendency of proceedings possibly affecting his interests," and that "[s]hort of providing personal service ... posting notice on the door of a person's home would, in many or perhaps most instances, constitute ... a constitutionally acceptable means of service." However, because the process servers in *Greene* were well aware that notices posted on apartment doors in the area involved were "not infrequently" removed by children or other tenants before they could have their intended effect, the court held that posting notice on an apartment door did not satisfy minimum standards of due process. Here, plaintiff has not alleged that the notices of sale posted on his door were likely to be removed.

Plaintiff, however, also relies on *United States v. Giertz*, 650 F.Supp. 886, 887 (S.D.Fla.1987), in which the court ruled that leaving a summons at the "last and usual place of abode" of a party, *without more*, fails to comport with due process of law within the meaning of the Fifth Amendment and indicated that "[l]eaving the summons with a person of suitable age and discretion or *service by mail* are constitutionally permissible alternatives to personal service under the *Mullane* standard." (emphasis added)

Here, we have more than the mere depositing of the notices of sale at plaintiff's residence. Notices of sale were also delivered to plaintiff's residence via certified mail, which according to *Mullane, Greene,* and *Giertz,* militates in favor of a finding of constitutionality.

Finally, plaintiff refers to an Internal Revenue Service Memorandum that provides in pertinent part:

The Service may not mail the notice of seizure to an owner ... who is in the district. The courts have held that such mailing to an owner within the district is grounds for voiding a seizure and sale....

The practical effect is that a notice of seizure in the district must be hand-delivered to the owner ... by the delegate of the Secretary (generally the revenue officer) at his place of abode or business.

■ The internal policies of the IRS do not provide plaintiff with legally enforceable rights. *See United States v. Derr,* 968 F.2d 943 (9th Cir.1992); *see also Bunce v. United States,* 28 Fed. Cl. 500 (1993) (fn. 9) ("an internal IRS policy does not bind the IRS"), *aff'd,* 26 F.3d 138 (Fed.Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 635, 130 L.Ed.2d 542 (1994). Moreover, "[p]ersonal service has not in all circumstances been regarded as indispensable to the process due to residents." *Mullane v. Central Hanover Bank & Trust Co., supra,* 339 U.S. at 314, 70 S.Ct. at 657, 94 L.Ed. at 873.

Accordingly, we hold that the posting of the notices of sale on plaintiff's door and the delivery of the notices by certified mail were procedures reasonably calculated to provide actual notice of the pending proceedings and to afford plaintiff an opportunity to present his objections. Our conclusion is buttressed by the fact that plaintiff had actual notice of and attended the sales.

## II.

■ Plaintiff next contends that the trial court failed to comply strictly with the publication requirements enunciated in I.R.C. § 6335(b). We disagree.

Section 6335(b) provides in pertinent part:

The Secretary ... shall cause a notification to be published in some newspaper published *or generally circulated within the county wherein such seizure is made* .... (emphasis added)

Here, notices of sale were published in the *Daily Journal.* Defendants submitted an affidavit from an employee of the *Daily Journal* indicating that the paper was a publication of general circulation in Jefferson County. Plaintiff did not contest this allegation by affidavit or as otherwise provided in C.R.C.P. 56. Accordingly, the court properly concluded that the *Daily Journal* is a publication of general circulation within the coun-

ty wherein the seizure was made. *See* C.R.C.P. 56(e).

Since § 6335(b) requires nothing more, *see Omnibank Iliff v. Tipton,* 843 P.2d 71 (Colo. App.1992), we hold that the trial court correctly determined, as a matter of law, that the notices of sale were properly "published" within the meaning of the Internal Revenue Code.

## III.

■ Plaintiff next contends that the trial court failed to comply strictly with the venue of sale requirements found in I.R.C. § 6335(d). We disagree.

Section 6335(d) provides that "[t]he place of sale shall be within the county in which the property is seized, except by *special order* of the Secretary." (emphasis added)

Treas.Reg. § 301.6335–1(c)(1) (1995) provides in pertinent part:

The place of sale shall be within the county in which the property is seized, *except that if it appears to the district director under whose supervision the seizure was made that substantially higher bids may be obtained for the property if the sale is held at a place outside such county,* he may order that the sale be held in such other place. (emphasis added)

Denver District Delegation Order Number 112 (Rev. 1), provides, in pertinent part:

Authority is redelegated to Revenue Officer Group Managers to approve the sale of seized property outside of the county in which the property is seized. The approval of the sale will be indicated by Group Manager's signing of Form 2434, Notice of Public Auction Sale....

On appeal, plaintiff does not contest the validity of the delegation of authority to Group Managers to approve the sale of property outside the county in which it was seized. Rather, he contends that I.R.C. § 6335(d) and Treas.Reg. § 301.6335–1(c)(1) require that, in order for a document to be considered a "special order," it must bear a "determination" on its face that a substantially higher bid may be obtained in a place

other than the county of seizure. We disagree.

In support of this contention, plaintiff relies on *Scar v. Commissioner of Internal Revenue,* 814 F.2d 1363 (9th Cir.1987). That case involved a controversy surrounding I.R.C. § 6212(a), which authorizes the Commissioner to send a notice of deficiency only if he first *"determines* that there is a deficiency."  (emphasis added)

This case, however, does not involve a deficiency determination, and, unlike § 6212(a), Treas.Reg. § 301.6335–1(c)(1) does not expressly require a "determination" to be made, but rather allows a sale outside the county of seizure when "it *appears* to the district director ... that substantially higher bids may be obtained."  (emphasis added)

Moreover, even if we assume a "determination" is a necessary predicate to the issuance of a "special order," *Scar* does not support plaintiff's contention that such "determination" must be memorialized in the "special order."  The court there held that a notice of deficiency did not meet the requirements of § 6212(a) because affirmative evidence appeared on its face indicating that no determination of a tax deficiency had been made, *not* because of a lack of memorialization of such a determination.

Plaintiff next cites *Silver Bell Industries, Inc. v. United States,* 76–1 U.S.T.C. ¶ 9432, 1976 WL 3799 (10th Cir.), *cert. denied,* 429 U.S. 822, 97 S.Ct. 71, 50 L.Ed.2d 83 (1976), in which the plaintiff argued, *inter alia,* that there was no "special order" by the Secretary or his delegate.  The court found that the claimants had met their burden of showing literal compliance with § 6335 by producing deeds which recited that the lands were "sold as provided by Section 6335 ... and the regulations promulgated thereunder," because this recital constituted prima facie evidence of the facts stated.  *See* 26 U.S.C. § 6339(b)(1)(1994) ("deed of sale given pursuant to section 6338 shall be prima facie evidence of the facts therein stated").

Although in *Silver Bell* the record indicated that no "special order" was produced at trial and that a revenue officer's deposition testimony raised a serious question as to the existence of such an order, the court found no error in the trial court's finding that the plaintiff had failed to overcome the presumption established by the claimants.

Like the deeds in *Silver Bell,* the deeds at issue in this case provide that the property was "sold as provided by Section 6335 of the Internal Revenue Code, and the regulations promulgated thereunder."  Thus, under § 6339(b)(1), defendants produced prima facie evidence that "special orders" existed.

Finally, plaintiff argues that the facts in the instant case are virtually identical to those contained in *Johnson v. Gartlan,* 334 F.Supp. 438 (E.D.Va.1971), *rev'd,* 470 F.2d 1104 (4th Cir.), *cert. denied,* 414 U.S. 865, 94 S.Ct. 122, 38 L.Ed.2d 85 (1973), in which the court ruled that the IRS had failed to comply with § 6335(d).  We disagree.

There, the trial court ruled that the IRS had not complied with the requirements of § 6335(d) because proper authority had not been delegated to the revenue officer who alone made the decision to hold the sale outside the county where the land was located.  The decision was not based upon a substantive defect in the "special order" itself.

Here, the notices of sale were on Form 2434 and signed by Group Managers.  Thus, based on the foregoing, we hold that the trial court correctly determined, as a matter of law, that the Secretary, through authorized personnel, executed "special orders" allowing sales of the properties to be held outside of Jefferson County.

### IV.

Finally, plaintiff contends that, since the payments were delivered to the auctioneer on the day of sale and not directly to the IRS, the IRS was required by statute to proceed immediately with the resale of the properties.  We disagree.

The notices of sale provided for deferred payment as follows: "20% payment at the time of bid acceptance and the balance payable by the close of business on the day of sale."  It is uncontested that defendants made the down payments and paid the balances to the auctioneer on May 3, 1993, and

that the auctioneer transmitted the funds to the IRS the following day.

Plaintiff alleges that the auctioneer was acting as the agent of the defendants. Thus, he argues that, because the law required payment by the end of the business day and the auctioneer did not pay the IRS until the following day, the defendants defaulted on their payments and the IRS was required to "forthwith proceed to again sell the property" pursuant to I.R.C. § 6335(e)(3). Even if we assume, arguendo, that the auctioneer was the agent of the defendants, plaintiff's argument fails.

Section 6335(e)(3) provides in pertinent part:

> If payment in full is required at the time of acceptance of a bid and is not then and there paid, the Secretary shall forthwith proceed to again sell the property in the manner provided in this subsection. (emphasis added)

Here, the terms of the sales did not require payment in full at the time of acceptance of the bid, but, rather, allowed for a portion of the payment to be deferred. Accordingly, even if we were to find that defendants did default on their payments, the IRS was not required pursuant to § 6335(e)(3) to resell the properties.

The judgment is affirmed.

BRIGGS and KAPELKE, JJ., concur.