**Paul C. BEHR and Bonnie Burke–Behr, Plaintiffs–Appellees,**

v.

**Harvey F. BURGE, Linda H. Burge n/k/a Linda H. Sanders, and Marjorie Sanders, Defendants–Appellants.**

No. 95CA0752.

Colorado Court of Appeals, Div. I.

Dec. 12, 1996.

Rehearing Denied Jan. 16, 1997.

Certiorari Denied Aug. 4, 1997.

Arckey & Reha, L.L.C., John F. Reha, Littleton, for Plaintiffs–Appellees.

Declan J. O'Donnell, Englewood, for Defendants-Appellants.

Opinion by Judge HUME.

Defendants, Harvey F. Burge, Linda H. Burge, n/k/a Linda Sanders, and Marjorie Sanders, appeal the trial court's judgments quieting title in certain real property to plaintiffs, Paul C. Behr and Bonnie Burke–Behr, granting them immediate possession thereof, and awarding them damages. We affirm in part, reverse in part, and remand with directions.

On September 3, 1992, the Internal Revenue Service (IRS) filed a Notice of Federal Tax Lien on defendants' home for unpaid taxes. The house was sold to plaintiffs at an IRS tax sale on March 28, 1994. After the redemption period expired, a Director's Deed was issued to plaintiffs.

Defendant Linda Sanders refused to leave the home when plaintiffs made a written

demand upon her to vacate. Plaintiffs then filed a complaint under the Forcible Entry and Detainer Act, § 13–40–101, et seq., C.R.S. (1987 Repl.Vol. 6A)(F.E.D.) to determine possession of the property and to quiet title pursuant to C.R.C.P. 105.

The trial court, finding substantial compliance with IRS provisions in conducting a tax seizure sale and issuing a Director's Deed, granted immediate possession to plaintiffs and set a date for a hearing to quiet title. Linda Sanders was evicted from the house on February 6, 1995.

On March 21, 1995, following a hearing, the court quieted title to the property in plaintiffs, awarded back rent for the time Linda Sanders occupied the house unlawfully, and assessed attorney fees against Sanders and Harvey Burge for asserting and maintaining frivolous, groundless, and vexatious defenses.

Initially, we note that the parties entered into a set of stipulations as to facts and issues relating to the tax sale. Further, plaintiffs argue that only three of the stipulated issues have been preserved for appeal by defendants and, as a result, only those issues should now be addressed. We agree, and decline to address other issues raised by defendants for the first time on appeal. *See First National Bank v. Union Tavern Corp.,* 794 P.2d 261 (Colo.App.1990).

## I.

Defendants first contend that the trial court erred in granting immediate possession of the property and later quieting title to it in plaintiffs because, by virtue of procedural irregularities, the IRS tax seizure and subsequent sale of defendants' house were void. We disagree.

■ Federal law applies in determining the validity of a tax sale and state law applies in determining the validity of the execution of a deed resulting from such sale. *Burgos Fuentes v. United States,* 14 Cl.Ct. 157 (1987).

■ The validity of a tax seizure sale and the subsequent transfer of land depends on whether the delinquent party has adequate notice of the sale under 26 U.S.C. § 6335(b) (1994); *VanSkiver v. United States,* 751 F.Supp. 1522 (D.Kan.1990), and whether the IRS has substantially complied with 26 U.S.C. §§ 6335 & 6337–39 (1994). *See Silver Bell Industries, Inc. v. United States,* 74–2 U.S.T.C. ¶ 9691, 1974 WL 653 (D.Colo.1974)(compliance with letter and spirit of law validates sale). A deed of sale given pursuant to 26 U.S.C. § 6338 (1994) is prima facie evidence that a tax sale complied with statutory regulations.

## A.

■ Defendants first assert that the tax sale is void because no proper authorization existed for conducting it in a county other than the one in which the property was located. We are not persuaded.

According to 26 U.S.C. § 6335(d) (1994), a tax sale is to be conducted within the county in which the property is seized except by special order of the Secretary. 26 C.F.R. § 301.6335–1(c)(1) (1996) provides that a district director may order that the sale be held outside such county if it appears that a substantially higher bid may be obtained in another place, and IRS regulations allow that authority to be redelegated to IRS local group managers.

Here, testimony was presented that, although the form setting the time and place of the tax sale outside the county in which the seizure occurred was not signed by the IRS group manager, such place was set with the approval and authority of the group manager. In addition, the group manager signed documents relating to the sale, thus establishing her knowledge and approval of the site selected for the sale. Accordingly, proper delegation existed to allow the tax sale location to be changed. *Cf. Johnson v. Gartlan,* 470 F.2d 1104 (4th Cir.1973)(authority not properly delegated when agent, acting alone, made decision to move location of tax sale); *see also Long v. Pippin,* 914 P.2d 529 (Colo.App.1996).

## B.

■ Defendants further argue that the tax sale is void because the IRS failed to have

the seized property appraised under 26 U.S.C. § 6334(b) (1994). This contention is without merit.

Section 6334(b) provides for an independent appraisal of exempt property when a taxpayer requests such appraisal. A principal residence is not exempt property under § 6334(b) if the levy of the residence is approved in writing by a district director or assistant district director of the IRS. *See* 26 U.S.C. § 6334(e)(1) (1994).

Here, the levy on defendants' house was expressly approved. Therefore, the appraisal procedure of 26 U.S.C. § 6334 (1994) is not applicable.

Further, the preparation of a minimum bid for the sale of seized property provides a process for protesting such bid. Although defendant Linda Sanders objected to the valuation, she did not avail herself of the opportunity to request another appraisal as provided by the express language in the minimum bid worksheet given to defendants. Therefore, defendants have no grounds upon which further to protest the appraisal process followed by the IRS.

### C.

■ Defendants' contention that the tax sale is void because of the IRS' use of two seizure numbers on paperwork pertaining to the seizure and sale of the property rests upon their argument that they were not afforded proper notice of the tax sale. We reject this contention.

Defendants had full knowledge of the time and place of the sale. Indeed, defendant Linda Sanders was present at the tax sale. Defendants have not shown that the required notice was not provided to them, and thus, they have not shown that the use of two seizure numbers violated any of the statutory requirements for a valid sale.

### D.

■ Alternatively, a taxpayer may ratify an IRS tax seizure sale and waive any objection he or she may have to irregularities in such sale by accepting and cashing an IRS surplus proceeds check. *Johnson v. Gartlan, supra.*

Here, Linda Sanders admits cashing the IRS surplus proceeds check two days after the trial court's ruling in the quiet title proceeding and disbursing the proceeds to pay off other debts, despite having previously acknowledged that by doing so she would be deemed to have ratified the sale. Nevertheless, she asserts that her action could not ratify the tax sale because she did not apply for the proceeds, there was no explanation included with the check from which she could have determined its purpose, and she cashed it after judgment had been entered against defendants. We are not persuaded.

The court in *Johnson v. Gartlan, supra,* determined that no explanation need be included with a surplus proceeds check, finding that it was unreasonable that a taxpayer would not know, or at least question, the purpose of receiving such a check and concluding, therefore, 'that such check was cashed with knowledge of its purpose.

Further, defendants are mistaken in asserting that there needed to be an application for surplus funds. Application for such funds is required only by parties other than the taxpayer who might have a claim to those funds. *See* 26 U.S.C. § 6342(b) (1994).

Defendants rely solely on *Johnson v. Gartlan, supra,* for their claim that they could ratify the tax sale only before any litigation began. However, the *Johnson* court, in determining that a tax sale was ratified by the cashing of a surplus proceeds check, did not hold that ratification can occur only before litigation begins.

Accordingly, by cashing the check, defendants have ratified the tax sale and any irregularity in the sales procedure is now deemed waived. *See Lawrence v. Beaman,* 90–2 U.S.T.C. ¶ 50,514, 1990 WL 157523 (D.Mass.1990)(tax sale ratified by party's prior knowledge of sale and informed acceptance of surplus proceeds check).

### II.

■ We reject defendants' contention that the trial court erred in granting immediate possession of the property to plaintiffs be-

cause defendants' subsequent eviction was not preceded by an action to foreclose upon a tax lien.

Plaintiffs demanded immediate possession of the property pursuant to §§ 13–40–106 & 13–40–110, C.R.S. (1987 Repl.Vol. 6A). However, defendants claim that the Director's Deed issued to plaintiffs is a lien according to § 38–35–117, C.R.S. (1982 Repl.Vol. 16A) and, therefore, must first be foreclosed upon according to § 38–39–101, et seq., C.R.S. (1982 Repl.Vol. 16A). We disagree.

According to 26 U.S.C. § 6339 (1994), a Director's Deed transfers to the purchaser of property "all right, title, and interest of the party delinquent in and to the property sold." Such deed vests full ownership and possessory rights in the purchasing party and is not an instrument used to secure the payment of an obligation that affects the title or an interest in real property. Thus, such a deed is not an instrument intended to secure payment of an obligation as contemplated by § 38–35–117.

We therefore conclude that a Director's Deed is not a lien that must be foreclosed upon in order for plaintiffs to assert their ownership rights. Accordingly, the trial court did not err in granting immediate possession of the property to plaintiffs as the true owners.

### III.

■ Defendants further contend that the service of notice provided to them under an F.E.D. proceeding was not proper and, as a result, the trial court should have dismissed plaintiffs' complaint. We disagree.

■ According to §§ 13–40–111 & 13–40–112, C.R.S. (1987 Repl.Vol. 6A), upon the filing of a complaint for F.E.D., a summons is to be issued to a defendant to appear before the court not less than five nor more than 10 days from the date of the summons. However, actual appearance cures a defective summons and service. *Tyler v. McKenzie,* 43 Colo. 233, 95 P. 943 (1908). Further, if an unsuccessful party to an F.E.D. action takes an appeal from a judgment, then that party waives all irregularities in the summons and

service thereof. *Fort v. Demmer,* 91 Colo. 285, 14 P.2d 489 (1932).

Here, the complaint was filed on October 18, 1994, and a hearing was set for January 25, 1995. Defendants appeared at all proceedings and have brought this appeal. Thus, by their actions, they have waived any irregularities that might have existed in the summons and service.

### IV.

■ Defendants next contend that the trial court erred in not allowing their expert witness to testify at the March quiet title hearing in support of Marjorie Sanders' assertion that her lien, filed after the Notice of Federal Tax Lien was recorded but before the Director's Deed was issued and recorded, was valid because IRS procedures were not followed in conducting the tax sale. This contention is without merit.

Here, the trial court had heard testimony on the issue of whether the IRS tax sale was valid and had ruled on that issue on two previous occasions. Defendants chose not to call any witnesses at those prior hearings. Thus, the testimony of defendants' expert witness was no longer relevant, and the trial court did not err in refusing to hear it.

■ Further, according to 26 U.S.C. § 6339(c) (1994), the delivery of a Director's Deed by the IRS, as a matter of law, discharges the property named in the deed from any claim, interest, lien, or encumbrance that is recorded after the time the notice of federal tax lien is recorded.

The notice of federal tax lien was recorded on September 3, 1992. Marjorie Sanders' lien was recorded May 18, 1994. The Director's Deed was issued to plaintiffs on October 5, 1994. Thus, Marjorie Sanders' lien had no effect on the validity or enforceability of the earlier recorded tax lien. *See Summer v. Allison,* 127 Ga.App. 217, 193 S.E.2d 177 (1972)(garnishment proceedings on a note, established between levy seizure and service of notice of lien by IRS and subsequent sale of the note, afforded no intervening lien).

## V.

■ Defendants also contend that the trial court erred in ordering them to pay damages to plaintiffs for the rental value of the property from the time the tax lien was recorded until they were dispossessed on February 5, 1995. We agree.

■ The amount of damages a prevailing plaintiff may recover in an F.E.D. action is the reasonable rental value of the premises during the time the other party continued an unlawful detainer. *Grombone v. Krekel,* 754 P.2d 777 (Colo.App.1988).

Here, the trial court, relying on 26 U.S.C. § 6339(b)(2) (1994), determined that defendants' unlawful possession began on September 3, 1992, when the tax lien was recorded.

Section 6339(b)(2) provides:

If the proceedings of the Secretary ... have been substantially in accordance with the provisions of law, [a Director's] deed shall be considered and operate as a conveyance of all the right, title, and interest the party delinquent had in and to the real property thus sold at the time the lien of the United States attached thereto.

In our view, this statutory provision simply establishes the taxpayer's interest to which a federal tax lien attached as of the date notice is filed. Other liens or interests established subsequent to the date the IRS notice is filed are junior and subject to a properly perfected notice of tax lien. The Director's Deed relates back to the notice date only for the purpose of determining the interests to which the federal tax lien attaches.

The federal scheme provides a procedure for sale, issuance of a certificate of purchase, and a period of redemption in which the taxpayer may redeem the property. *See* 26 U.S.C. §§ 6335, 6337, & 6338 (1994).

The attributes of ownership, including the right to possession of the property, remain vested in the delinquent taxpayer owner until the taxpayer's ownership interest is vested in another following sale, expiration of the owner's right of redemption, and the issuance of the Director's Deed.

The federal statutory scheme is similar to that provided by § 38–39–110, C.R.S. (1982 Repl.Vol. 16A) which provides, in pertinent part, as follows:

Upon the issuance and delivery of such deed, but not until then, title shall vest in the grantee and such title shall be free and clear of all liens and encumbrances recorded or filed subsequent to the recording or filing of the lien on which the sale referred to in this section was based.

Accordingly, damages for unlawful possession could not begin to accrue at least until the execution and delivery of the Director's Deed.

## VI.

Defendants' contention that the trial court committed error by cancelling the March quiet title hearing is without merit.

Our review of the record shows that on March 21, 1995, the trial court held a scheduled hearing for purposes of quieting title and that both parties were represented by counsel and availed themselves of the opportunity to present argument and call witnesses on their behalf. That defendants were not allowed at that hearing to retry the issue of the validity of the tax sale that had previously been fully litigated and ruled upon by the trial court does not mean that no hearing took place.

## VII.

■ Defendants lastly contend that the trial court erred in entering an award for attorney fees for asserting a frivolous defense. We disagree.

According to § 13–17–102(4), C.R.S. (1987 Repl.Vol. 6A), a trial court must assess attorney fees if it finds that an attorney's or party's defense of an action was substantially frivolous, groundless, or vexatious. The determination that an award of attorney fees based upon the assertion of a frivolous and groundless defense is warranted is discretionary with a trial court, and its decision will not be overturned on appeal if it is supported by the record. *Travers v. Rainey,* 888 P.2d 372 (Colo.App.1994).

Here, the trial court awarded attorney fees against defendants Harvey Burge and Linda

Sanders after specifically finding that their defenses were substantially frivolous, groundless, and vexatious, and that certain defenses were interposed for the sole purposes of delay, harassment, and to cause plaintiffs to incur legal expenses. The court also found that Linda Sanders, even when proceeding without an attorney, clearly knew or should have known that the defenses asserted were substantially frivolous, groundless, or vexatious. *See* § 13–17–102(6), C.R.S. (1987 Repl.Vol. 6A).

Our review of the record shows that sufficient evidence exists to support the trial court's determination, and thus, we will not disturb its ruling.

The judgment is affirmed in all respects except for the award of damages in favor of plaintiffs. The damage award based upon unlawful possession is reversed, and the cause is remanded for reconsideration of the issue of damages in light of the views expressed in this opinion.

METZGER and ROY, JJ., concur.