*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0075P (6th Cir.)
File Name: 04a0075p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  *v.*

ANTHONY P. PERRY,
  *Defendant-Appellee,*

  v.

TRYLLOUS HOSSLER,
  *Intervenor-Appellant.*

No. 01-4265

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 01-00017—Dan A. Polster, District Judge.

Argued: April 30, 2003

Decided and Filed: March 10, 2004

Before: CLAY and GIBBONS, Circuit Judges;
DUGGAN, District Judge.*

———————————

*  The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, sitting by designation.

———————————

## COUNSEL

**ARGUED:** Karen Kelly Grasso, THOMPSON HINE, Cleveland, Ohio, for Appellant. Christian H. Stickan, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, Frank J. Witschey, WITSCHEY & WITSCHEY, Akron, Ohio, for Appellees. **ON BRIEF:** Karen Kelly Grasso, Robert M. Gippin, THOMPSON HINE, Cleveland, Ohio, for Appellant. Christian H. Stickan, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, Frank J. Witschey, WITSCHEY & WITSCHEY, Akron, Ohio, for Appellees.

CLAY, J., delivered the opinion of the court, in which DUGGAN, D. J., joined. GIBBONS, J. (pp. 36-43), delivered a separate dissenting opinion.

———————————

## OPINION

———————————

CLAY, Circuit Judge. Intervenor Tryllous Hossler appeals a November 5, 2001 order vacating a judgment lien, entered by the United States District Court for the Northern District of Ohio, after Intervenor filed a judgment lien pursuant to 18 U.S.C. § 3664(m)(1)(B) of the Mandatory Victims Restitution Act ("MVRA"), against an Ohio property belonging to Defendant Anthony Perry. This transaction occurred after Perry pleaded guilty to various counts related to a securities fraud scheme and the court ordered restitution to his victims, including Intervenor.

For the reasons set forth below, we **VACATE** the order releasing Intervenor's judgment lien.

## FACTS AND PROCEDURAL HISTORY

On January 25, 2001, Defendant Anthony Perry pleaded guilty to three counts related to securities fraud. The court sentenced Perry to a two-year prison sentence and ordered Perry to make restitution in the amount of $715,078.40 to his victims. Intervenor, a ninety-one year -old woman, is one of Perry's victims. The restitution order required Perry to reimburse her $92,000. The district court, however, ordered Perry to make all payments to the clerk's office so that the clerk could "forward the money to victims *pro rata* until the full amount is paid."

David Bettiker, Donna Bettiker, James A Bruggeman, Henry Bruno, Mary Bruno, Wilma R. Cottrell, Lloyd P. Greenlese, Dorothy A. Nicolard, Donald L. Nicolard, Thomas W. Ozbolt, Julia A. Ozbolt, Robert Serpentini, Amelia Serpentini, Jayne L. Simo, Arnold W. Stanley, Carl Weisenbach, Eleanor M. Weisenbach, and Russell E. Workman (collectively, the "Perry Investors") are also victims included in the restitution order. The Perry Investors appear before us as Appellees.

The restitution order did not specify an order of priority among the victims. Pursuant to the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3664(m)(1)(B), Intervenor obtained a judgment lien on Perry's Wadsworth, Ohio, real property. She recorded the lien in Medina County, Ohio, on August 7, 2001.

In September of 2001, Perry entered into a land contract and asset purchase agreement with Dawn and Boyd Ferrebee, prospective buyers of the Wadsworth property. Perry owns a corporation as well, and Perry also planned to sell the business' assets to the Ferrebees as well in an asset purchase agreement that would close with the closing of the land contract. The closing of the asset purchase agreement was contingent on the purchase of the land contract. If the land

contract failed to close, the asset purchase agreement would fail to close as well.[1]

Perry's civil attorney then moved to release Intervenor's lien on behalf of the other victims.[2] In findings and orders dated October 25, 2001, and November 5, 2001, the district court granted the motion and vacated the lien. Intervenor filed her notice of appeal on November 28, 2001.

After the district court vacated the lien, the land contract and asset purchase agreement closed. Perry turned the $45,000 he received over to the district court, which disbursed the money proportionately to all investors, including Intervenor.

On December 28, 2001, the government moved to dismiss the appeal for want of jurisdiction, arguing that Intervenor lacked standing to appeal the district court's order and that Intervenor's appeal was untimely. Intervenor opposed the motion. On February 4, 2002, we ordered the parties to address both the standing and timeliness issues in their briefs.

## DISCUSSION

Before reaching the merits, we must consider whether (1) we lack jurisdiction because of Intervenor's allegedly untimely filing; or (2) Intervenor lacks standing to prosecute this appeal.

---

[1]Intervenor's counsel notes that Intervenor proposed, by letter, that she transfer her lien to the district court's fund so that Perry could close the sale, after which they would resolve the legal issue of Intervenor's priority. The Perry Investors refused her offer.

[2]As discussed further below, Perry's civil attorney seems to have a significant conflict of interest because he represents both Perry and his victims. One suspects that the Perry Investors would have avoided many of the unusual problems this case presents had they followed Intervenor and secured independent counsel.

## I.

We independently ascertain our own jurisdiction. *United States v. True*, 250 F.3d 410, 418 (6th Cir. 2001). A timely notice of appeal "is both a mandatory and a jurisdictional prerequisite." *United States v. Christunas,*126 F.3d 765, 767 (6th Cir. 1997).

Intervenor filed her notice of appeal twenty-three days after the district court vacated her lien. Appellees make a halfhearted attempt to argue that Intervenor filed her notice of appeal late. Fed. R. App. P. 4(a) provides:

(1) Time for Filing a Notice of Appeal.

   (A) In a civil case, except as provided in Rules 4(a)(1)(B), 4(a)(4), and 4(c), the notice of appeal required by Rule 3 must be filed with the district court within 30 days after the judgment or order appealed from is entered.

   (B) When the United States or its officer or agency is a party, the notice of appeal may be filed by any party within 60 days after the judgment or order appealed from is entered.

Fed. R. App. P. 4(a) covers civil proceedings. In contrast, Fed. R. App. P. 4(b) provides less time for criminal appeals:

(1) Time for Filing a Notice of Appeal:

   (A) In a criminal case, a defendant's notice of appeal must be filed in the district court within 10 days after the later of:

     (i) the entry of either the judgment or the order being appealed; or

     (ii) the filing of the government's notice of appeal.

Appellees claim that Intervenor's appeal falls under Fed. R. App. P. 4(b), which would make her notice of appeal thirteen days late.

This is not an ordinary appeal from a criminal judgment because it involves a civil matter initiated by a third party. Fed. R. App. P. 4(b)(1)(A) states that "[i]n a criminal case, a *defendant's* notice of appeal must be filed in the district court within 10 days." (emphasis added). Intervenor was not the defendant below, and Fed. R. App. P. (4)(b) makes no provision for other parties.[3]

In this and other circuits, 4(a) governs civil-type appeals in criminal cases. *See, e.g.*, *United States v. Hayman*, 342 U.S. 205, 209 n.4 (1952) (noting motions to set aside or correct criminal sentences are civil actions for purposes of Fed. R. App. P. 4); *United States v. Wade*, 255 F.3d 833, 839 (D.C. Cir. 2001) (holding petition for attorney fees filed by intervenors in federal criminal abatement proceeding was a "civil case," rather than a "criminal case," for purpose of determining time limits for taking appeal) (citing *In re 1997 Grand Jury*, 215 F.3d 430, 433-36 (4th Cir. 2000)); *Palma v. United States*, 228 F.3d 323, 325 (2d Cir. 2000) (finding timely government appeal after fifty-six days of the lower court's decision, in a criminal proceeding, to restore defendant's firearms privileges); *United States v. Truesdale*, 211 F.3d 898, 904 (5th Cir. 2000) (holding action to recover attorneys fees arising out of a criminal matter is not part of the underlying criminal case, making Fed. R. App. P. 4(b) applicable); *United States v. Means*, 133 F.3d 444, 450 (6th

---

[3]The Tenth Circuit is the lone exception. In *United States v. Robbins*, 179 F.3d 1268, 1270 (10th Cir. 1999), the court found that Fed. R. App. P. 4(b) governs civil appeals for attorneys' fees arising out of criminal proceedings. Other circuits have directly attacked *Robbins*. *See United States v. Wade*, 255 F.3d 833, 839 n.5 (D.C. Cir. 2001) (rejecting *Robbins* because it "provides little analysis" and lacks "any persuasive power"); *In re 1997 Grand Jury*, 215 F.3d 430, 435 (4th Cir. 2000) (rejecting *Robbins* because of its "conclusory rationale").

Cir. 1998) (finding defendant had sixty days to appeal the denial of his motion to consolidate his original criminal proceedings with his motion to vacate his sentence filed pursuant to 28 U.S.C. § 2255); *United States v. Taylor*, 975 F.2d 402, 403 (7th Cir. 1992) ("[M]any appealable orders technically 'in' criminal cases look more civil than criminal—from the return of bond money to motions under 28 U.S.C. § 2255 that parallel the civil petition for a writ of habeas corpus."); *United States v. Martinson*, 809 F.2d 1364, 1367 (9th Cir. 1987) (treating motions for return of property pursuant to Federal Rule of Criminal Procedure 41(e) as civil equitable proceedings even though brought under the rules of criminal procedure). Thus, although the judgment lien is related to a criminal proceeding, 4(a) applies to Intervenor's appeal because a dispute over a lien is more appropriately classified as "civil-type" litigation.

## II.

We next consider Intervenor's standing. We find that she has standing under both the  the MVRA and Article III.

## A.

The Victim and Witness Protection Act ("VWPA"), as amended in 1996 by the Mandatory Victims Restitution Act, provides a framework enabling victims of certain crimes to receive compensation from the perpetrators. *See* 18 U.S.C. §§ 3363-64. The VWPA, as modified by the MVRA, allows victims named in restitution orders to obtain and register a judgment lien on the defendant's property that then operates as a lien on the property under state law. *Id*. at §§ 3664(m)(1)(B), (d)(2)(A)(v). The law does not provide any limits on the victim's ability to obtain a judgment lien and it provides no express means by which a district court can alter a victim's lien rights *post hoc*.

### 1.

The new law unquestionably reflects a dramatically more "pro-victim" congressional attitude; unlike its predecessor, restitution is mandatory rather than discretionary for defendants convicted of certain offenses. *See* 18 U.S.C. §§ 3663A(a)(1) ("Notwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in subsection (c), the court shall order . . . that the defendant make restitution to the victim of the offense or, if the victim is deceased, to the victim's estate."). *But see id*. at § 3663A(c)(3) (describing very limited circumstances, not applicable to this case, in which the district court may refrain from ordering restitution). Also unlike the VWPA, district courts may no longer consider a defendant's financial circumstances when determining the amount of restitution to be paid. *Id*. at § 3664(f)(1)(A) ("In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant."). The MVRA thus made restitution mandatory and creates a greater basis for victim self-help. *See* 18 U.S.C. § 3663(a)(1), (a)(3). Most pertinent here—and also unlike the VWPA—the new law allows victims to obtain judgment liens based on restitution orders. *Id*. at § 3664(m)(1)(B).

Significantly, the MVRA also has its own legislative history. As the Senate Judiciary Committee explained:

> This provision [the MVRA] is intended by the committee to clarify that the issuance of a restitution order is an integral part of the sentencing process that is to be governed by the same, but no greater, procedural protections as the rest of the sentencing process. . . . The committee believes that this provision fully comports with the requirements of the due process clause of the fifth amendment. . . . [T]he act . . . ensures the protection of the victim's right to a fair determination of the restitution owed. The committee believes this provision

will ensure the streamlined administration of justice while at the same time protecting the rights of all individuals.

S. REP. NO. 104-179, at 20-21 (1996), *reprinted in* 1996 U.S.C.C.A.N. 924, 933-34. This makes clear that Congress meant the MVRA to protect the rights of all individuals, including victims, in a manner consistent with due process requirements. As the subsequent paragraphs explore, the heretofore unmentioned due process issue is an elephant in Appellees' rather tiny room.

**2.**

To the extent any ambiguity exists as to whether Intervenor has standing under the MVRA, we must follow the doctrine of constitutional doubt and "interpret statutes to avoid 'grave and doubtful constitutional questions.'" *Pa. Dep't. of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) (citing *United States ex rel. Attorney Gen. v. Del. & Hudson Co.,* 213 U.S. 366, 408 (1909)). The government may not deprive people of property interests without due process. *See, e.g., United States v. James Daniel Good Real Prop.,* 510 U.S. 43 (1993); *FDIC v. Mallen,* 486 U.S. 230 (1988); *Barry v. Barchi,* 443 U.S. 55 (1979). At least since *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555 (1935), constitutionally protected property rights include the "right to retain [a] lien until the indebtedness thereby secured is paid."[4] *Id.* at 594.

---

[4]*See also Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 (1983) (holding that "a mortgagee clearly has a legally protected property interest," and so is "entitled to notice reasonably calculated to apprise him" of a proceeding that would have the effect of voiding that interest); *Davis Oil Co. v. Mills*, 873 F.2d 774, 787 (5th Cir. 1989) (holding that even though junior lien holder's mineral lease was terminated, as matter of Louisiana law, upon judicial sale of property pursuant to foreclosure on mortgage superior to lease, junior lien holder was nevertheless entitled to due process prior to termination of his interest in property); *Security-First Nat'l Bank of L.A. v. Rindge Land & Navigation Co.*, 85 F.2d 557, 561 (9th Cir. 1936) ("The right to retain a lien until the debt secured

The MVRA provides that a lien against the defendant's property "shall be a lien on the property of the defendant located in such State in the same manner and to the same extent and under the same conditions as a judgment of a court of general jurisdiction in that State."  18 U.S.C. § 3664(m)(1)(B). In Ohio, judgment liens create property interests, see *Central Trust Co. v. Jensen*, 616 N.E.2d 873, 877 (Ohio 1993), and the federal constitution prevents the deprivation of these Ohio property interests without due process, see *Verba v. Ohio Cas. Ins. Co.*, 851 F.2d 811, 817 (6th Cir. 1988). Therefore, once Intervenor obtained a valid lien under state law—a fact not disputed—she also obtained a property right of constitutional magnitude.

At least limited to the facts Intervenor presents, interpreting the MVRA as never authorizing non-party appeals would create potentially significant due process problems. It is unclear from the record precisely what process Intervenor received before the district court vacated her lien. She filed papers in opposition to the motion to vacate her lien, but it appears as though the Court did not hold a hearing. More importantly, the district court's order vacating the lien does not specify the law upon which the court relies. The order just assumes plenary authority to vacate state law judgment liens.

---

thereby is paid is a substantive property right which may not be taken from the creditor consistently with the Fifth and Fourteenth Amendments to the Constitution."); *In re Franklin*, 210 B.R. 560, 565 (Bankr. N.D.Ill.1997) ("[I]t is a general requirement of constitutional due process that a lienholder be given actual notice of any proceeding in which its lien may be lost."); *James Talcott Constr., Inc. v. P & D Land Enter.*, 862 P.2d 395, 397-98 (Mont.1993) ("The right to retain a lien until the debt secured thereby is paid is a substantive property right. Therefore, the discharge of a lien amounts to deprivation of a substantive property right.") (internal citations omitted); *In re Upset Sale*, 479 A.2d 940, 944 (Pa.1984) ("As we read *Mennonite Board of Missions v. Adams*, due process requires protection of liens because they are property interests.") (internal citation omitted).

Orders issued without legal basis, conflicts of interest, and generally mysterious conduct reflect exactly the sort of sloppy adjudication that a thorough district court proceeding, *i.e.*, due process, is meant to avoid. Of course, it may be that nothing untoward occurred below. Process can vindicate superficially questionable behavior just as easily as it can uncover impropriety in seemingly ordinary activity. We would raise potentially serious due process issues by interpreting the MVRA, when applied to this case, as not authorizing an appeal so that this Court can determine whether the district court handled matters properly. Particularly in light of the legislative history, it would make sense to read the statute in a manner that will allow Intervenor to vindicate (or attempt to vindicate) her constitutionally recognized property interest.

Our thesis is simple: A judgment lien is a constitutionally protected property right. That is undisputed. Congress may not make a law that interferes with constitutionally protected property rights without that law being subjected to meaningful judicial scrutiny. We must interpret the provisions of the MVRA in a manner that avoids unwarranted constitutional problems.

**B.**

Article III affords standing to non-parties for the purposes of appeal in some circumstances. *Yniguez v. Arizona*, 939 F.2d 727, 731 (9th Cir. 1991) (stating that "'post -judgment intervention for purposes of appeal may be appropriate if the intervenors meet . . . traditional standing criteria'") (quoting *Legal Aid Soc'y of Alameda County v. Brennan*, 608 F.2d 1319, 1328 (9th Cir. 1979).

**1.**

*Bryant v. Yellen,* 447 U.S. 352 (1980), is a leading example of a non-party appeal.[5] *Bryant* involved a federal statute governing the allocation of irrigation waters in the West meant to benefit smaller farmers by restricting access to the water to farmers holding no more than 160 acres of land. *Id.* at 368 n.19. The United States sued a California irrigation agency to force it to comply with the federal statute. *Id*. at 366. The district court found that the statute did not apply to certain lands in California, owned in parcels larger than 160 acres, that had vested rights to irrigation waters. *Id*. The government did not appeal this decision. *Id.* Even though the government declined to appeal, the Supreme Court unanimously recognized the standing of a group of farmworkers to intervene and appeal the decision. *Id.* at 366-68. The Court reached this conclusion because the intervenors "had a sufficient stake in the outcome of the controversy to afford them standing to appeal." *Id*. at 368.

In *Linda R.S. v. Richard D.*, 410 U.S. 614 (1973), the Court considered whether a non-party had standing to challenge the government's decision to apply a law in a particular manner. *Id*. In *Linda R.S.*, the appellant, the mother of an illegitimate child, sued to enjoin the local district attorney from failing to prosecute the father for refusing to pay child support. *Id.* The district attorney generally prosecuted delinquent fathers of

---

[5]Other representative cases involving post-judgment appeals by non-parties include *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 395-96 & n. 16 (1977), *Hodgson v. United Mine Workers*, 473 F.2d 118, 129 (D.C. Cir.1972), *Pellegrino v. Nesbit*, 203 F.2d 463, 465 (9th Cir. 1953), *United States Casualty Co. v. Taylor*, 64 F.2d 521, 526-527 (4th Cir. 1933), and *American Brake Shoe & Foundry Co. v. Interborough Rapid Transit Co.*, 3 F.R.D. 162, 164 (S.D.N.Y. 1942).

legitimate children but not those of illegitimate children. *Id*.[6] The Supreme Court found the petitioner lacked standing, albeit in language that helps clarify the standing issues in this case. *See id*. at 617-19.

The Court held that, "appellant has failed to allege a sufficient nexus between her injury and the government action which she attacks to justify judicial intervention." *Id*. at 617-18. The Court conceded that the lack of child support meant that appellant suffered an injury, but stressed that "'[t]he party who invokes [judicial] power must be able to show . . . that he has sustained or is immediately in danger of sustaining some *direct* injury *as the result of* [a statute's] enforcement.'" *Id*. at 618 (citing *Massachusetts v. Melon*, 262 U.S. 447, 488 (1923)) (emphasis added in *Linda R.S.*). The Court noted that the "appellant has made no showing that her failure to secure support payments results from the nonenforcement" of the child support statute; rather, "if appellant were granted the requested relief, it would result only in the jailing of the child's father. The prospect that prosecution will, at least in the future, result in payment of support can, at best, be termed only speculative." *Id*. Thus, the Court emphasized that the proposed remedy (arrest) would not redress the injury (lack of child support). Stated differently, the injury (lack of child support) was not traceable to the alleged impropriety (non-prosecution). As the Court concluded, "[c]ertainly the 'direct' relationship between the alleged injury and the claim sought to be adjudicated, which previous decisions of this Court suggest is a prerequisite to standing, is absent in this case." *Id*.

---

[6]Although the *Linda R.S.* decision never reached the merits, the Court recognized the rights of illegitimate children three years later. *See Matthew v. Lucas*, 427 U.S. 495, 506 (1967) (subjecting official distinctions based on legitimacy to intermediate scrutiny).

**2.**

The Court decided *Linda R.S.* thirty years ago, and the Court has since developed the "direct relationship" standing requirement into two more precise sub-requisites; "redressability," and "fairly traceable." *See, e.g.*, *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990); *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976). In its first use of the specific phrase "fairly traceable," the Supreme Court explained that standing requires that "the injury is indeed fairly traceable to the defendant's acts or omissions." *Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 261 (1977) (citing, *inter alia*, *Linda R.S.*, 410 U.S. at 617). The Court has described "redressability" as the causal connection between the injury and the relief sought. *See Allen v. Wright*, 468 U.S. 737, 752 (1984) (explaining that redressability depends on whether "the prospect of obtaining relief from the injury as a result of a favorable ruling is too speculative").

Ultimately, in *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464 (1982), the Supreme Court rearticulated its prior standing decisions in a three-part test for standing: someone has standing if he or she (1) suffers and injury in fact that (2) is fairly traceable to the alleged misconduct and (3) redressable by the relief sought. *Id*. at 472; *see also Allen*, 468 U.S. at 751 ("A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.") (citing *Valley Forge*, 454 U.S. at 472).

The dissent cites four cases for the critical proposition that "[b]ecause restitution is part of criminal sentencing and is penal in nature, victims of crime do not suffer an 'injury in fact' when a district court modifies or terminates a restitution order." Given that the Supreme Court has held that such abstract injuries as "aesthetic harm," see *United States v. SCRAP*, 412 U.S. 669, 678 (1973), and "stigmatization," see

*Heckler v. Mathews*, 465 U.S. 728, 739-40 (1984), qualify as constitutionally cognizable injuries, it is hard to accept that an inadequate restitution order (conceivably depriving someone of thousands of dollars) would not constitute an injury in fact when the statute has authorized restitution. If victims lack standing to challenge restitution orders, the justiciability defect has much more to do with the redressability and "fairly traceable" prongs of the standing test than with a lack of an injury in fact.

First, the dissent cites *United States v. Mindel*, 80 F.3d 394 (9th Cir. 1996), in which the defendant attempted to appeal the district court's decision to rescind a judgment it previously entered pursuant to the VWPA with regard to the disposition of the defendant's property. *Id*. at 395-96. Next, the dissent discusses *United States v. Johnson*, 983 F.2d 216 (11th Cir. 1993), which involved a bank attempting to appeal the district court's decision to rescind a restitution order issued pursuant to the VWPA. *Id*. at 218. Third, the dissent references *United States v. Schad*, No. 97-5003, 1998 WL 193129, *1 (10th Cir. Apr. 22 1998), an unpublished order that considered whether a victim could participate as a party to obtain a garnishment order. *Id*. at *1. Finally, the dissent cites one of this Court's unpublished Rule 34 orders, *United States v. Curtis*, No. 99-5574, 2000 WL 145183, *1 (6th Cir. Feb. 1, 2000). The order noted that "the victim, as a non-party to the criminal case, would not have standing to challenge the restitution order." *Id*. This standing remark was entirely tangential to *Curtis*, which involved a defendant's appeal of a district court order denying his request to end interest charges on a restitution order. *Id*. *Curtis* did not involve a non-party.

From the outset, none of the cases cited involve the MVRA. *Curtis* never mentions the MVRA because *Curtis* has little to do with the present issue, and courts decided *Mindel*, *Johnson*, and *Schad* before Congress implemented the

MVRA.[7] *Schad* relied largely on the reasoning in both *Mindel* and *Johnson*, see *Schad*, 1998 WL 193129, *2, and *Mindel* primarily on *Johnson*, see *Mindel*, 80 F.3d at 397. *Johnson*, in turn, depends extensively on VWRA's legislative history, see *Johnson*, 983 F.2d at 220, which the MVRA has now superseded.

Notably, *Johnson* also gains support from *Kelly v. Robinson*, 479 U.S. 36 (1986), in which the Supreme Court held that restitution obligations imposed as probation conditions are not dischargable in bankruptcy proceedings. *See Johnson*, 983 F.2d at 220. According to the Court:

> The criminal justice system is not operated primarily for the benefit of victims, but for the benefit of society as a whole. Thus, it is concerned not only with punishing the offender, but also with rehabilitating him. Although restitution does resemble a judgment "for the benefit of" the victim, the context in which it is imposed undermines that conclusion. The victim has no control over the amount of restitution awarded or over the decision to award restitution. Moreover, the decision to impose restitution generally does not turn on the victim's injury, but on the penal goals of the State and the situation of the defendant.

*Kelly*, 479 U.S. at 52. Although the *Mindel/Johnson* rationale uses the phrase "injury in fact," the reasoning of these opinions essentially tracks *Kelly*. As the *Mindel* Court argued:

> The Eleventh Circuit, however, has considered this issue and has held that crime victims do not have standing to appeal a district court's rescission of a criminal restitution

---

[7]Although the Tenth Circuit filed its *Schad* order in 1998, after Congress enacted the MVRA, *Schad* involved a judgment issued pursuant to the VWPA and the *Schad* court analyzed that order under the VWPA. *See* 1998 WL 193129, at *1.

order. *See United States v. Johnson*, 983 F.2d 216, 217 (11th Cir.1993). Distinguishing the divergent interests of victims from those of the Government—the former's being compensatory, while the latter's penal—the Eleventh Circuit determined that a restitution order serves a penal rather than a compensatory purpose. *Id*. at 220. Thus, the victims had not suffered "injury in fact," and therefore did not have standing to appeal the district court's rescission order.

80 F.3d at 397. Another case observing that victims may not appeal restitution orders, *United States v. Brown*, 744 F.2d 905 (2d Cir. 1984), uses language taken from *Kelly* almost verbatim:

> [T]hough the VWPA was intended to compensate the victim, it does so in a manner distinct from the normal functioning of a civil adjudication. A court imposing an order of restitution is required to consider the defendant's ability to pay. 18 U.S.C. § 3580(a). The victim may therefore be awarded less than full compensation solely because of the offender's financial circumstances. Furthermore, unlike a civil suit, the victim is not a party to a sentencing hearing and therefore has only a limited ability to influence the outcome. The victim cannot control the presentation of evidence during either the criminal trial or the sentencing hearing and is not even guaranteed the right to testify about the extent of his losses. Neither can he appeal a determination he deems inadequate.

*Id*. at 910. Since the cases holding that victims cannot appeal restitution orders depend so heavily on the VWPA, the differences between the VWPA and the MVRA help show why these older decisions do not preclude Intervenor from appealing the district court's elimination of her property interest.

As these cases mention, the VWPA does not guarantee the victim much; under the VWPA, the victim may have received less based on the offender's financial circumstances, and the victim had no right to receive anything at all. The VWPA also did not afford victims much "ability to influence the outcome." *Id*. at 910. As *Kelly* explained, under the VWPA, "the decision to impose restitution generally does not turn on the victim's injury, but on the penal goals of the State and the situation of the defendant." 479 U.S. at 52. None of this is true anymore.

### 3.

As explained in Section II(A), the MVRA makes restitution *mandatory* for victims of certain offenses. *See* 18 U.S.C. §§ 3663A(a)(1). Thus, the victims of many crimes now have a right to restitution. Also unlike the VWPA, district courts may no longer consider a defendant's financial circumstances when determining the amount of restitution to be paid. *Id*. at § 3664(f)(1)(A). The MVRA invites victims to participate in the sentencing process through the United States Probation Office.[8] *Id*. at § 3664(d)(2). These changes reflect a more

---

[8]That provision states:

The probation officer shall, prior to submitting the presentence report under subsection (a), to the extent practicable—

(A) provide notice to all identified victims of—

> (i) the offense or offenses of which the defendant was convicted;
> (ii) the amounts subject to restitution submitted to the probation officer;
> (iii) the opportunity of the victim to submit information to the probation officer concerning the amount of the victim's losses;
> (iv) the scheduled date, time, and place of the sentencing hearing;
> (v) the availability of a lien in favor of the victim pursuant to subsection (m)(1)(B); and
> (vi) the opportunity of the victim to file with the probation officer a separate affidavit relating to the amount of the

fundamental shift in the purpose of restitution, as explained in the MVRA's legislative history. The new restitution scheme is not merely a means of punishment and rehabilitation, but an "attempt to provide those who suffer the consequences of crime with some means of recouping the personal and financial losses." H.R. REP. NO. 104-16, at 5 (1995).

Each case the dissent cites, *Mindel*, *Johnson*, and *Schad*, involved the appeal of an order rescinding or modifying a restitution order, not an order vacating a constitutionally cognizable property interest.[9] *See Mindel*, 80 F.3d at 395-96; *Johnson*, 983 F.2d at 218; *Schad*, 1998 WL 193129, *1. Essentially, both the government and the dissent reason that

---

victim's losses subject to restitution; and

(B) provide the victim with an affidavit form to submit pursuant to subparagraph (A)(vi).

18 U.S.C. § 3664(d)(2).

[9] The only case to discuss victims' appellate rights under the MVRA is *United States v. Kemp*, 938 F.Supp. 1554 (N.D.Ala.1996). The *Kemp* court wrote:

Who will complain to an appellate court when a victim does not get what he thinks the MVRA calls for? The act makes no attempt to remedy the defect in the VWPA which surfaced in *United States v. Johnson*, 983 F.2d 216 (11th Cir.1993), namely, that a victim has no standing to appeal. The U.S. Attorney, overworked and with no motivation whatsoever to take an appeal on behalf of a victim, will not do it. This fact has been proven empirically, because, as previously stated, no U.S. Attorney has *ever* appealed from a *denial* of restitution or from an order of restitution in a lesser amount than that claimed by a victim.

*Id*. at 1564 (emphasis in original). Even assuming this analysis is correct, the case is distinguishable because *Kemp* addresses the right to appeal a restitution order, whereas this case involves the right to appeal an order vacating a lien.

because a victim lacks the injury in fact required to appeal a restitution order, a victim must also lack the injury in fact required to appeal anything sufficiently related to a restitution order. This flimsy principle forms the core of the Appellees' rationale for claiming Intervenor did not suffer an injury in fact.

The issue, as the dissent frames it, is whether a litigant suffers an injury in fact when a district court rescinds or modifies its own restitution order which formed the basis from which the litigant had secured a state court judgment lien. Even assuming, however, the dissent is correct in its view of the scope of the district court's order, Intervenor has undoubtedly suffered an injury in fact because the district court vacated Intervenor's property interest after it had been secured by the judgment lien. *See Valley Forge Christian Coll.*, 454 U.S. at 472; *Verba*, 851 F.2d at 811. Standing looks at whether the challenged conduct (vacating the judgment lien) is the cause of her injury, and whether the relief requested (restoring the lien) would redress the injury. Standing measures the distance between the Intervenor's demand and the problem's source, and Intervenor's demand and the problem's solution, but not the connection between Intervenor's demand and elements of Perry's trial and sentencing that might be *sine qua non* of Intervenor's complaint, but are not *causa causans* of her problem.

### 4.

By this point, one should recognize two serious problems with Appellees' position. First, despite their attempt to characterize the inability to appeal a VWPA restitution order as a result of an inadequate injury in fact, the "fairly traceable" and redressability portions of the standing analysis offer a much more reasonable explanation for the inability to appeal a VWPA order. Second, Appellees are not seriously contending that the deprivation of a constitutionally protected liberty interest is not a constitutionally cognizable injury; it is also easy to show that Intervenor's injury is fairly traceable to

the order of which she complains and that a favorable ruling from this Court would redress her injury.

Beginning with the first issue, the VWPA made it difficult for victims to appeal restitution orders because their claimed injuries, inadequate restitution payments, were not fairly traceable to purportedly unlawful conduct, nor necessarily redressable by judicial action. As noted, under the VWPA, a court did not have to award restitution. Restitution fell within the district court's discretion, which meant that a decision to award restitution, or award arguably insufficient restitution, was not fairly traceable to any statutory violation. Furthermore, one can plausibly claim that a restitution order found insufficient by a victim could not be redressed judicially because, as the case law quoted above emphasized, the VWPA used restitution only as a punitive and rehabilitative tool, not a mechanism to partly recompense victims. Thus, particular features of the VWPA scheme—features absent from the MVRA—explain the decisions that deny standing to appeal a VWPA restitution order.

Second, whether or not standing would exist for someone to appeal a restitution order under the MVRA, it definitely exists for Intervenor to appeal an order destroying a protected property interest. Assuming the district court acted illegally in vacating Intervenor's lien, her loss is "fairly traceable" to the district court's order. A decision by this Court reversing the district court's order would redress Intervenor's injury. This is straightforward.

### 5.

Once one concludes that Intervenor has suffered an injury in fact, fairly traceable to the wrong of which she complains and redressable by the relief she seeks, courts must still consider whether prudential concerns make an appeal improper. This means that the alleged injury must fall within the "zone of interests" protected by the statute at issue. *See*

*Data Processing Serv. Org., Inc. v. Camp*, 397 U.S. 150, 156 (1970); *Dist. 2, Marine Eng'r Beneficial Ass'n v. Burnley*, 936 F.2d 284, 286 (6th Cir. 1991).

The "zone of interest" test focuses on Congressional intent. *Clarke v. Securities Indus. Assoc.*, 479 U.S. 388, 399 (1987). The challenged statute is victims' rights legislation that expressly authorizes the disputed judgment lien. Intervenor has raised an issue within the MVRA's "zone of interests."

Prudential concerns also prohibit us from affording standing to parties that attempt to raise nothing more than abstract grievances better handled by the legislative or executive branches, see, *Colo. Taxpayers Union, Inc. v. Romer*, 963 F.2d 1394, 1396 (10th Cir. 1992), *S.J. Groves & Sons Co. v. Fulton County*, 920 F.2d 752, 757 (11th Cir. 1991), or from affording standing to parties attempting to assert the legal rights of third parties. *See, e.g., United States v. Raines*, 362 U.S. 17, 22 (1960), *Tileston v. Ullman*, 318 U.S. 44, 46 (1943). Other circuits to have considered these issues have found that prudential concerns do not prevent a nonparty from appealing when that party participated in the proceedings and the equities favor hearing the appeal.[10] *Commodity Futures Trading Comm'n v. Topworth Int'l, Ltd.*, 205 F.3d 1107, 1113 (9th Cir.1999); *Davis v. Scott*, 176 F.3d

---

[10] Although the parties refer to Tryllous Hossler as "Intervenor," she never formally intervened as one would do in a civil proceeding. A requirement that a party either intervene or attempt to intervene seems inappropriate in this unusual case, because no mechanism exists for a private citizen to intervene in a criminal case. Thus, we have not always required intervention. In *CBS Inc. v. Young*, 522 F.2d 234, 237 (6th Cir. 1975), for instance, we allowed a news organization to appeal a "gag" order issued in a civil case even though the news organization was "neither a party to the litigation nor specifically enjoined by the order from discussing the case." As far as our Article III standing analysis is concerned, it makes no difference that this is criminal case. *See Associated Builders & Contractors v. Perry*, 16 F.3d 688, 692 (6th Cir. 1994) ("In the context of standing, however, the criminal versus civil distinction is a distinction without a difference.").

805, 807 (4th Cir.1999); *Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc.,* 141 F.3d 490, 496 (3d Cir.1998); *Searcy v. Philips Elecs. N. Am. Corp.,* 117 F.3d 154, 157 (5th Cir.1997); *see also West v. Radio-Keith Orpheum Corp.*, 70 F.2d 621, 624 (2d Cir. 1934) ("The reason for [the party-only appeals doctrine] is that if not a party, the putative appellant is not concluded by the decree, and is not therefore aggrieved by it. But if the decree affects his interests, he is often allowed to appeal") (L. Hand, J.).

First, Intervenor participated in the proceedings below because she filed papers in opposition to Perry's request that the district court vacate her lien. Intervenor's counsel also attended the original sentencing hearing. Second, equities favor permitting this appeal. There is a substantial question as to whether the district court had the authority to vacate the lien because no MVRA provision specifically grants district courts that right. Since Intervenor had an undisputed property interest, the district court's decision to revoke that interest adversely affected Intervenor's interests even though she did not participate as a party to the criminal proceeding. As explained above, Intervenor proposed, by letter, that she transfer her lien to the district court's fund to remove any impediment to Perry's attempt to sell his assets, after which the court would resolve the legal issue of Intervenor's priority. The victims, albeit represented by Perry's counsel, declined Intervenor's offer. Nevertheless, Intervenor made an attempt to solve the problem. Equity favors permitting this appeal. Finally, Intervenor is not attempting to raise some sort of generalized policy grievance nor does she seek to litigate someone else's rights. *See, e.g., Raines*, 362 U.S. at 22; *Tileston*, 318 U.S. at 46; *Colo. Taxpayers Union*, 963 F.2d at 1396; *S.J. Groves*, 920 F.2d at 757.

Intervenor thus meets both the prudential and constitutional requirements for Article III standing.

### III.

Because Intervenor has standing under both the MVRA and Article III itself, we proceed to consider the merits of her claim. Intervenor argues that the district court had no authority to release her lien because the MVRA does not provide such authority. Appellees counter that the court below had the necessary authority under the All Writs Act, 28 U.S.C. § 1651(a). Appellate courts review a district court's assertion of jurisdiction under the All Writs Act *de novo. See, e.g., United States v. Bravo-Diaz*, 312 F.3d 995, 997 (9th Cir. 2002); *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355, 363 (3d Cir. 2001).

The All Writs Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. The All Writs Act enables federal courts to issue such commands "as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *United States v. N.Y. Tel.*, 434 U.S. 159, 172 (1977). The Supreme Court has also stressed, however, that the All Writs Act does not authorize courts "to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate." *Pa. Bureau of Corr. v. United States Marshals Serv.*, 474 U.S. 34, 43 (1985). "Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." *Id*.

### A.

Although Appellees cite two cases in which a court used the All Writs Act in connection with a restitution order, neither decision helps us much with respect to the issues the parties presently litigate. First, Appellees cite *United States v. Friedman*, 143 F.3d 18 (1st Cir. 1998). In *Friedman*, the

district court, pursuant to the All Writs Act, ordered the defendant to liquidate certain assets and deliver the proceeds to the Marshals Service, but only "after all secured claims, liens, and other costs associated with the real estate closing are paid." *Id*. at 20. Unisource, a company not a victim of the defendant's crimes, claimed to hold an equitable lien on the defendant's property. *Id*. Unisource did not receive any proceeds from the sale of the defendant's assets, however, because the marshals confiscated the proceeds. *Id*. Unisource then asked the district court for its share. *Id*. at 22. The government argued that only victims may receive restitution, and that the court lacked authority under the VWPA to release funds to Unisource stemming from the marshals' seizure. *Id*. The district court disagreed and paid Unisource. On appeal, the First Circuit affirmed, finding that the court's original order protected lien-holders and the All Writs Act gave the court the authority to issue a further order to prevent the frustration of its original order. *Id*.

Other than the hopelessly vague proposition that district courts may sometimes use the All Writs Act in relation to restitution orders, it is unclear what *Friedman* tells us. *Friedman* has little to do with the scenario we presently consider because no one argued in *Friedman* that the second order either conflicted with the VWPA or violated a constitutional right.

Second, Appellees cite *United States v. Venneri*, 782 F. Supp. 1091 (D. Md. 1991), in which a district court vacated a defendant's conviction by writ of error *coram nobis* because the defendant was originally convicted pursuant to a statute later found unconstitutional. *Id*. at 1092. The defendant was originally ordered to pay restitution to one of his victims. *Id*. The court considered whether it had jurisdiction under the All Writs Act to direct the victim to repay restitution to the defendant. *Id*. Although the court noted the lack of statutory authority for such an order, it found that the All Writs Act provided the necessary mechanism. *Id*. at 1094. Unlike the present case, however, there was no dispute in *Venneri* that

the victim lacked entitlement to the restitution award. *Id*. As the court explained, "[d]espite the dearth of statutory authority, it remains indisputable that [the victim] must repay the [defendant]." *Id*. Thus, the victim had no entitlement to the restitution, nor did the victim have a constitutionally-recognized property right to the money. Neither *Venneri* nor *Friedman* addresses the situation presently before us.

At first glance, the All Writs Act seems to authorize a district court to issue any subsequent order in furtherance of an initial order as long as the initial order was lawful. As one would expect, however, even if a court properly issues its initial order, it may not use the All Writs Act to issue a subsequent order to effectuate the first order if the subsequent order is itself unconstitutional. *See, e.g., United States v. City of New York*, 972 F.2d 464, 470 (2d Cir. 1992) ("Nor can the All Writs Act confer on the courts the power to ignore the case or controversy requirement, which is rooted in Article III of the constitution's definition of judicial power."); *In re Baldwin-United Corp.* (*Single Premium Deferred Annuities Ins. Litig.*), 770 F.2d 328, 340 (2d Cir. 1985) ("The All-Writs Act . . . cannot be used to circumvent or supersede the constitutional limitations of the Eleventh Amendment."). This is consistent with the text of the All Writs Act, which only authorizes courts to issue writs "agreeable to the usages and principles of law." 28 U.S.C. § 1651. "[A]greeable to the usages and principles of law" also suggests that courts may not use the All Writs Act to issue a second order to effectuate an initial, lawful order if the second order works by violating some other statutory provision.

### B.

This case involves two statutory provisions seemingly operating in conflict. In its entirety, 18 U.S.C. 3664(m)(1)(B) states:

At the request of a victim named in a restitution order, the clerk of the court shall issue an abstract of judgment

certifying that a judgment has been entered in favor of such victim in the amount specified in the restitution order. Upon registering, recording, docketing, or indexing such abstract in accordance with the rules and requirements relating to judgments of the court of the State where the district court is located, the abstract of judgment shall be a lien on the property of the defendant located in such State in the same manner and to the same extent and under the same conditions as a judgment of a court of general jurisdiction in that State.

This provision, which authorizes Intervenor's lien, contains no language giving the court any right to vacate a lien if it conflicts with the restitution order. Title 18 U.S.C. § 3664(d)(2)(A)(v) references (m)(1)(B) by mandating that "[t]he probation officer shall, prior to submitting the presentence report under subsection (a), to the extent practicable . . . provide notice to all identified victims of . . . the availability of a lien in favor of the victim pursuant to subsection (m)(1)(B)."[11]

Although the statute unambiguously allows victims to impose judgment liens in accordance with state law, the statute gives sentencing courts significant flexibility to tailor restitution orders to particular circumstances. As 18 U.S.C. § 3664(i) explains, "[a] restitution order may direct the defendant to make a single, lump-sum payment, partial payments at specified intervals, in-kind payments, or a combination of payments at specified intervals and in-kind payments." The statute also clarifies that "[i]f the court finds that more than 1 victim has sustained a loss requiring restitution by a defendant, the court may provide for a different payment schedule for each victim based on the type and amount of each victim's loss and accounting for the economic circumstances of each victim." 18 U.S.C.

---

[11]The record does not reveal whether this is how Intervenor learned of her right to file a lien.

§ 3664(f)(i). The MVRA never mentions *pro rata* distribution, but §§ 3664(f)(3)(A) and (i) appear to give trial courts the right to require reimbursement in that fashion. By definition, *pro rata* distribution means that no victim has priority, but a judgment lien is a device *designed* to give the lien-holder priority. In this sense, the statutory provisions appear to conflict.[12]

## C.

One of the most basic canons of statutory interpretation is that a more specific provision takes precedence over a more general one. *See, e.g., Green v. Bock Laundry Mach. Co.,* 490 U.S. 504, 524 (1989) (stating that a general statutory rule does not govern unless there is no more specific rule); *Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 153 (1976) (holding that the general venue provision of the Securities Exchange Act of 1934 does not trump the specific venue provision of the National Bank Act); *Y.S. v. Castro-Rocha,* 323 F.3d 846, 851 (10th Cir. 2003) ("[A] fundamental canon of statutory interpretation holds that, when there is an apparent conflict between a specific provision and a more general one, the more specific one governs, regardless of the priority of the provisions' enactment.") (citing *Cal. ex rel. Sacramento Metro. Air Quality Mgmt. Dist. v. United States,* 215 F.3d 1005, 1013 (9th Cir. 2000)). As the Supreme Court explained:

The reason and philosophy of the rule is, that when the mind of the legislator has been turned to the details of a subject, and he has acted upon it, a subsequent statute in general terms, or treating the subject in a general manner, and not expressly contradicting the original act, shall not be considered as intended to affect the more particular or

---

[12]Of course, had the district court structured an order that gave Intervenor priority, as opposed to a *pro rata* distribution, no conflict would exist.

positive previous provisions, unless it is absolutely necessary to give the latter act such a construction, in order that its words shall have any meaning at all.

*Radzanower,* 426 U.S. at 153.

The MVRA expressly references a victim's right to a judgment lien on two occasions, see 18 U.S.C. §§ 3664(d)(2)(A)(v), (m)(1)(B), and, as recounted above, provides significant detail, see § 3664(m)(1)(B). In contrast, the MVRA never mentions *pro rata* distribution. Rather, *pro rata* distribution is simply one alternative a court might adopt under the highly general and flexible grants of authority in 18 U.S.C. §§ 3664(f)(3)(A) and (i). In accordance with the "specific over general" canon of statutory construction, we are more inclined to read the lien provision as an exception to the trial court's general authority to structure restitution orders, rather than assuming that the more vague powers Congress granted in 18 U.S.C. §§ 3664(f)(3)(A) and (i) are an exception to the very precise lien provision. This suggests that federal courts do not have the authority to vacate an already-existing judgment lien based on their right to enforce MVRA orders under the All Writs Act.

**D.**

As already noted, the Supreme Court has made clear that we must construe statutes to avoid constitutional doubt when it is reasonably possible to do so. *DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988) (defining the canon of constitutional doubt as one that requires courts, "where an otherwise acceptable construction of a statute would raise serious constitutional problems, . . . [to] construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress"); *Crowell v. Benson*, 285 U.S. 22, 62 (1932) ("When the validity of an act of the Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first

ascertain whether a construction of the statute is fairly possible by which the question may be avoided."); *Hooper v. California*, 155 U.S. 648, 657 (1895) ("The elementary rule is that every reasonable construction must be resorted to, in order to save a statute from unconstitutionality."); *cf. Murray v. The Charming Betsy*, 2 Cranch (6 U.S.) 64, 118 (1804) ("[A]n act of Congress ought never to be construed to violate the law of nations if any other possible construction remains.") (Marshall, C.J.). A construction that permits district courts to destroy constitutionally protected property interests without due process violates this precept if another reasonable construction is "fairly possible." *Crowell*, 285 U.S. at 62.

There is another "fairly possible" construction of the statute. One might reasonably assume that Congress only meant to allow states to record liens that reflect restitution orders, not liens that conflict with or exceed restitution orders. Consider again the language MVRA judgment lien provision, which states that, "[u]pon registering, recording, docketing, or indexing [the restitution order and judgment] *in accordance with the rules and requirements relating to judgments of the court of the State where the district court is located*, the [restitution order and judgment] shall be a lien on the property of the defendant located in such State." 18 U.S.C. § 3664(m)1)(B) (emphasis added). The lien is then recognized and handled "in the same manner and to the same extent and under the same conditions as a judgment of a court of general jurisdiction in that State." *Id*. It seems more than "fairly possible" that Congress meant for victims to obtain judgment liens in a manner that complied with the relevant state's procedure.

No one can get a lien for more than the value of the supporting judgment. Yet Ohio (perhaps erroneously) gave Intervenor such a lien, apparently without regard for the underlying judgment and restitution order authorizing only *pro rata* distribution. Ohio may have erred, and Perry could have moved in the Ohio judiciary, rather than the federal

district court, to vacate or modify the lien. Such an action by Perry protects the due process rights associated with the lien, because under Ohio law, judgment liens receive constitutional protections, see *Central Trust Co. v. Jensen*, 616 N.E.2d 873, 876 (Ohio 1993), and a judgment by an Ohio state court vacating a judgment lien is a final appealable order, see *Roach v. Roach*, 132 N.E.2d 742, 744 (Ohio 1957). This interpretation of the law protects Intervenor's due process rights and is "fairly possible" given the statutory language, further suggesting that federal courts do not have the authority to vacate an already-existing judgment lien based on their right to enforce MVRA orders under the All Writs Act.

### E.

We may not construe a statute in a manner that renders part of the law superfluous. *See, e.g., Regions Hosp. v. Shalala*, 522 U.S. 448, 467 (1998); *United States v. Nordic Vill., Inc.,* 503 U.S. 30, 36 (1992); *Fed. Election Comm'n v. Nat'l Conservative Political Action Comm.,* 470 U.S. 480, 486 (1985). More than a century ago, the Supreme Court explained:

> We are not at liberty to construe any statute so as to deny effect to any part of its language. It is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every word. As early as in Bacon's Abridgment, sect. 2, it was said that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.' This rule has been repeated innumerable times.

*Wash. Market Co. v. Hoffman*, 101 U.S. 112, 115-16 (1879). Thus, any interpretation of the MVRA that makes one if its provisions irrelevant is presumptively incorrect.

Appellees' position, however, has exactly this effect. If one asserts that the district court *always* has the authority to

invalidate a victim's judgment lien and impose unsecured *pro rata* distribution, then the MVRA would read as though the provision granting victims the right to judgment liens did not exist. Victims could obtain judgment liens only at the sentencing court's unlimited discretion.

The proposed alternative discussed above—allowing victims to challenge an allegedly improper lien in state court rather than allowing a district court to invalidate it entirely—would not render the judgment lien provision superfluous. At minimum, 18 U.S.C. § 3664(m)(1)(B) would compel state courts to approve judgment liens consistent with restitution orders to the extent allowed under state law, thereby giving the victim a security interest in the defendant's property, even if (because of the restitution order's language) that security interest is not permitted to rise above the victim's *pro rata* share. Thus, 18 U.S.C. § 3664(m)(1)(B) would still serve a purpose.

The rule against surplusage further supports the conclusion that federal courts do not have the authority to vacate an already-existing judgment lien based on their right to enforce orders under the All Writs Act.

### F.

Finally, Appellees argue that accepting Intervenor's position would create a "race to the courthouse," *i.e.*, if victims can obtain judgment liens despite a court order requiring *pro rata* distribution, then the victim fortunate enough to file the first lien has the greatest chance of recovery, and victims will have to compete for priority.

The MVRA is not optimally structured. *Cf. United States v. Locke*, 471 U.S. 84, 95 (1984) (acknowledging that, for the statute under consideration, "Congress might have acted with greater clarity or foresight"); *United States v. Jackson*, 824 F.2d 21, 25 (D.C. Cir. 1987) (admitting that the statute under consideration was "[l]amentably . . . not meticulously

drafted"). Regardless, the "race to the courthouse" is a far-fetched concern. District courts have discretion to issue all sorts of orders that would interfere with the race to the courthouse: pure *pro rata* distribution, distribution to the neediest victims first, distribution to the most seriously injured first, *pro rata* within classes of victims, and so forth. *See* 18 U.S.C. §§ 3664(f)(3)(A) and (i). In all cases, victims who attempt to secure judgment liens beyond what the sentencing court authorized should fail to have their liens recognized by the state, and if the liens are recognized anyway, victims could attempt to vacate them in appropriate state court proceedings. Victims would not scramble to perfect liens that should not (and thus probably cannot) be perfected under state law, and would remain subject to challenge.[13]

The feared "race to the courthouse" is specious and three major canons of statutory construction suggest that a victim has a right to a secured interest in the defendant's property despite other less precise statutory language that Appellees claim allows district courts to vacate judgment liens. A court may not use the All Writs Act to issue a second order to enforce an initial order when the second order renders statutory language superfluous and raises constitutional questions. Consequently, the district court did not have the authority under the All Writs Act, 28 U.S.C. § 1651(a), to vacate Intervenor's judgment lien.

---

[13]Intervenor acquired a lien for an amount greater than her *pro rata* interest but, as noted, Ohio may have erred and Perry can move to vacate that lien in the Ohio courts. One might conceive of cases in which the availability or function of state lien law creates problems, but this possibility is a matter only Congress can address by amending the statute.

**IV.**

Those who would disagree must demonstrate not just that the district court had the authority to issue an order altering (or revoking) a judgment lien, but that the order was substantively correct.

The All Writs Act only allows the district court to issue an order attempting to effectuate its earlier order. *N.Y. Tel.*, 434 U.S. at 172. Therefore, assuming the district court had authority to vacate Intervenor's judgment lien, that authority only extended to the part of Intervenor's lien that violated the court's initial *pro rata* distribution order. Defendant owed Intervenor $92,000. Assume, hypothetically, that there were only two other victims: one (Victim A) owed $46,000, and another (Victim B) owed $138,000. Under *pro rata* distribution, Victim A would receive approximately seventeen cents (one-sixth) of every dollar recovered, Intervenor would receive approximately thirty-three cents (one-third) of every dollar recovered, and Victim B would receive fifty cents (one-half) of every dollar recovered. If, continuing the hypothetical, Intervenor obtained a lien against the defendant's house for the full $92,000, that conflicts with *pro rata* distribution. *However, vacating the lien completely—as the district court did in this case—also conflicts with pro rata distribution, because pro rata distribution would entitle Intervenor to one-third of anything recovered.* Again assuming the All Writs Act affords the district court has the power to alter judgment liens, the court would only have the authority to modify the hypothetical Intervenor's lien to the extent it would have entitled her to more than one-third of the defendant's assets' value.

Although the math is much more complex in the case presently before us than the calculations in the hypothetical, the principle is exactly the same. The court below did not merely vacate the portion Intervenor's statutorily-authorized judgment lien that conflicted with the initial *pro rata* order, the district court vacated the *entire* judgment lien. Thus, the

second order actually exceeded the first order's scope—assuming victims have any rights at all under the statute's judgment lien provision, Intervenor had the right to a judgment lien large enough to cover her *pro rata* share. In this sense, the order vacating the judgment lien did not correctly apply the All Writs Act authority Appellees mistakenly believes the district court possesses.

## CONCLUSION

Both Appellees and the dissent misconstrue Intervenor's two compelling arguments for standing, either one of which provides sufficient basis for us to address the merits. With regard to the merits, the district court had no authority under the All Writs Act to vacate Intervenor's statutorily authorized judgment lien. Anyone wishing to argue that the lien conflicted with the district court's *pro rata* order had the right to dispute the lien in the Ohio courts.

For all the aforementioned reasons, we **VACATE** the order releasing Intervenor's judgment lien.

_____

## DISSENT

_____

JULIA SMITH GIBBONS, Circuit Judge, dissenting. I dissent because I believe that Hossler lacks standing to contest the district court's order releasing her judgment lien. The district court was enforcing the terms of its prior restitution order, which was entered at sentencing in a criminal case in which Hossler was not a party. The majority's broad interpretation of the MVRA would allow victims to appeal numerous decisions relating to the enforcement of restitution orders and would lead to victims participating in criminal proceedings in a manner that Congress never intended when it enacted the MVRA. Hossler has not been deprived of a constitutionally protected right to receive restitution; she has been deprived of the opportunity to enforce a restitution order in a manner that was contrary to what was intended by the district court and in a way that harms the rights of Perry's other victims to receive the restitution to which they are also entitled.

Standing is a threshold issue in every case before a federal court. *United States v. McVeigh*, 106 F.3d 325, 334 (10th Cir. 1997). To establish standing, plaintiffs must show that "their claimed injury is personal, particularized, concrete, and *otherwise judicially cognizable*." *Raines v. Byrd*, 521 U.S. 811, 820 (1997) (emphasis added). Standing involves both constitutional requirements, which are based on the case or controversy clause in Article III, and prudential limitations, which are crafted by the courts. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992); *McClure v. Ashcroft*, 335 F.3d 404, 408 (5th Cir. 2003). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as

opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan*, 504 U.S. at 560-61). Beyond the constitutional requirements in Article III, "the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing." *Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 474 (1982). One of these prudential requirements is that the interest of a plaintiff seeking standing under a particular statutory provision must be "within the zone of interests protected by the law invoked." *United States v. Mindel*, 80 F.3d 394, 397 (9th Cir. 1996) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). Under the zone of interests test, plaintiffs lack standing if their interests are "so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *United States v. Grundhoefer*, 916 F.2d 788, 792 (2d Cir. 1990) (quoting *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987)).

The district court granted the Perry Investors' motion to vacate Hossler's lien upon finding that the lien would give preferential treatment to Hossler. At sentencing, Perry expressed a strong desire to make restitution, and his counsel described a plan for selling his property and liquidating his assets in order to pay his restitution obligations. The district court found that Perry's restitution payments "should be made to the Clerk of Courts," who would then "forward the money to the victims *pro rata* until the full amount is paid." In granting the Perry Investors' motion to vacate Hossler's judgment lien, the district court noted that its restitution order "unequivocally required that restitution be distributed to *all* the Perry Investors *pro rata*," and concluded that Hossler's lien "would give preferential treatment to only one of Perry's numerous victims – which is plainly inconsistent [with the court's prior restitution order]." For both constitutional and prudential reasons, Hossler lacks standing to challenge the district court's order.

Prior to the MVRA's enactment in 1996, courts consistently held that victims did not have standing to appeal a district court's decision modifying or enforcing a restitution order. *See Mindel*, 80 F.3d at 397 (holding that beneficiary of criminal restitution order lacked standing to challenge modification of sentence to rescind restitution order); *United States v. Johnson*, 983 F.2d 216 (11th Cir. 1993). These courts have noted that while a criminal restitution order resembles a judgment for the benefit of the victim, restitution is penal, not compensatory. *Kelly v. Robinson*, 479 U.S. 36, 52 (1986). Thus, "[t]he direct, distinct, and palpable injury in a criminal sentencing proceeding plainly falls only on the defendant who is being sentenced . . . and he alone suffers the direct consequences." *Grundhoefer*, 916 F.2d at 791; *see also Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (finding that a private citizen generally lacks standing "to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution"). Because restitution is part of criminal sentencing and is penal in nature, victims of crime do not suffer an "injury in fact" when a district court modifies or terminates a restitution order. *See Mindel*, 80 F.3d at 397; *Johnson*, 983 F.2d at 221 *United States v. Schad*, No. 97-5003, 1998 WL 193129, at *2 (10th Cir. April 22, 1998) (holding that a crime victim lacked standing to appeal the district court's order terminating the victim's right to continue garnishing the defendant's wages pursuant to a criminal restitution order).

As the majority opinion notes, *Mindel*, *Johnson*, and *Schad* all involved appeals from orders rescinding or modifying restitution orders. In *Johnson*, for example, the district court rescinded its prior restitution order when the defendant became delinquent in her restitution payments that were supposed to be made to the victim bank in monthly installments. *Id.* at 218. The bank appealed the district court's order rescinding the restitution obligation, and the Eleventh Circuit held that the bank lacked standing because it had not suffered a direct injury adequate to satisfy Article III's constitutional requirements. *Id.* at 221. But just as a

victim does not suffer an injury in fact when a district court modifies or rescinds a restitution order, Hossler has not suffered an injury in fact in this case because the district court's decision vacating her judgment lien was in essence enforcing the terms of its prior restitution order. The fact that the district court in this case vacated Hossler's judgment lien instead of modifying or rescinding its restitution order does not mean that she has somehow been injured in a more concrete or particularized way than the plaintiffs in *Mindel* and *Johnson*. The majority opinion asserts that the MVRA does not provide an "express means by which a district court can alter a victim's lien rights *post hoc*," but presumably a district court does exactly that when it rescinds or modifies restitution orders. However, prior cases have held that in those circumstances, victims have not suffered injury in fact and do not have standing to appeal. Similarly, Hossler has not suffered an injury in fact because the district court denied her the opportunity to make an end run around the schedule set forth in the court's previous restitution order.[1]

Even if Hossler has suffered an injury in fact different from that suffered by the victim bank in *Johnson*, for example,

---

[1]While the majority notes that the MVRA provides a mechanism for victims to obtain judgment liens in § 3664(m)(1)(B), it is worth noting that the MVRA also contemplates the authority of district courts to require reimbursement in a particular manner – whether in lump-sum payments, partial payments at specified intervals, in-kind payments, or some combination of the above. 18 U.S.C. § 3664(f)(3)(A). District courts may also favor one victim over another in crafting a restitution order, based on "the type and amount of each victim's loss and accounting for the economic circumstances of each victim." § 3664(i). A restitution order creating a priority of victims for payment would certainly impact a victim's right to obtain a judgment lien under § 3664(m)(1)(B) and would likely result in situations where a victim desires to challenge the district court's order of priority. These victims, like Hossler, have not suffered injury in fact and should not be permitted to appeal such decisions. By opening the door to victims like Hossler, the majority also opens the door to other victims unhappy with the terms of a district court's restitution order.

---

prudential limitations counsel against according Hossler standing to challenge the district court's order in this case. Critical to the issue of Hossler's standing is the context in which her appeal occurs: Hossler is appealing an order entered in a criminal case in which she was not a party. If the Perry Investors had gone to state court and filed a lawsuit seeking to vacate her judgment lien, Hossler certainly would have standing to appeal from any subsequent decision by the state court, but that is not what is happening here. Nothing in the language or legislative history of the MVRA indicates that Congress intended to provide victims with a private remedy to sue or appeal restitution decisions made in the context of criminal cases in which the victims were not parties.[2]

As the majority notes, a comparison between the MVRA and its predecessor, the VWPA, is relevant here because courts have held that victims do not have standing to appeal a district court's modification or rescission of a restitution order under the VWPA. The majority concludes that the MVRA reflects a more "pro-victim" attitude, primarily because restitution is now mandatory for certain crimes under the MVRA, and district courts may no longer consider a defendant's financial circumstances when determining the amount of restitution to be paid. Even if Hossler has a right to restitution because restitution is now mandatory under the MVRA, this right was not denied when the district court entered its order vacating her judgment lien. Hossler retained her right to restitution in the manner and amount set forth in the district court's original restitution order. She was merely denied the opportunity to enforce the district court's restitution order in a manner that was contrary to what was intended by the district court. In its zeal to protect Hossler's

---

[2]In fact, it is telling that Hossler has never formally intervened because no mechanism exists for a private citizen to intervene in a criminal case. The absence of such a mechanism for intervention is further evidence that Congress did not contemplate that victims would participate in criminal cases as parties with standing to appeal restitution orders.

judgment lien, the majority makes no mention of Perry's other victims, who presumably also have a right to receive restitution under the provisions of the MVRA and who will be denied that right if Perry is unable to sell his remaining assets due to Hossler's judgment lien.

In fact, the MVRA has removed victim discretion to enforce restitution orders; enforcement of such orders now rests exclusively with the United States. 18 U.S.C. § 3664(m)(1)(A). In this respect at least, the MVRA is less "pro-victim" than the predecessor VWPA. Prior to 1996, 18 U.S.C. § 3663 provided that an order of restitution could be enforced by the United States and "by the victim named in the order to receive the restitution in the same manner as a judgment in a civil action." Under this statutory scheme, either the United States or the victim could seek to enforce an order of restitution. This provision was amended, and pursuant to the new legislation in the MVRA, an order of restitution is now enforceable only by the United States. It is worth noting that this change was enacted after several circuit courts had concluded that victims did not have standing to challenge restitution orders.[3] It seems unlikely that Congress

---

[3] While this court has not issued any published opinions on the issue of a victim's standing to appeal a restitution order, it briefly discussed the issue in an unpublished opinion. *United States v. Curtis*, No. 99-5574, 2000 WL 145183 (6th Cir. Feb. 1, 2000). In *Curtis*, the defendant appealed a district court order denying his motion to end interest charges on his order of restitution. *Id.* at *1. The motion had been filed in an attempt to force a finance company who had purchased the account to cease charging interest on the defendant's restitution debt and to restore any interest already charged on his debt. *Id.* In affirming the district court's judgment, the court noted that the finance company was never a party to Curtis's criminal case, and that the district court had no authority over the finance company. *Id.* The court added: "Even the victim itself, as a non-party to the criminal case, would not have standing to challenge the restitution order." *Id.* (citing *Mindel*, 80 F.3d at 397). According to the court, the victim "would have to bring a civil action to enforce the restitution order." *Id.* (citing *United States v. Diamond*, 969 F.2d 961, 969 (10th Cir. 1992)).

intended to extend standing to criminal victims in light of those decisions and its decision to remove victims from the enforcement provision.

While the legislative history of the MVRA indicates that Congress intended mandatory restitution to be one means by which the criminal justice system could be reformed into a system that is more responsive to the needs of crime victims, the legislative history also evinces a Congressional intent to streamline the administration of restitution within the criminal justice system:

> The procedures contained in this section are intended to provide a streamlined process for the determination of both the amount of restitution owed to each victim and the terms of repayment based on a reasonable interpretation of the defendant's economic circumstances. The committee believes that the need for *finality and certainty* in the sentencing process dictates that this determination be made quickly, but also recognizes that justice requires that this particular aspect of the criminal sentence be subject to review in the light of changed circumstances. *The committee believes that restitution must be considered a part of the criminal sentence, and that justice cannot be considered served until full restitution is made.*

S. Rep. 104-179, 1996 U.S.C.C.A.N. 924, 933 (emphasis added). It is hard to see how the goal of streamlining the restitution process is served by allowing victims to intervene and enforce restitution orders in ways that are contrary to what was intended by the district court at sentencing.

In support of its position that Hossler has met the prudential requirements for standing in this case, the majority notes that "the equities favor permitting this appeal" because "[t]here is a substantial question as to whether the district court had the authority to vacate the lien because no MVRA provision specifically grants district courts that right." This analysis

confuses the issue of Hossler's standing with the issue of whether the district court had the authority to vacate a state court judgment lien. These are two separate issues. Hossler does not have standing merely because she does not like the district court's order or because we do not like the district court's order. Prudential limitations on standing require that Hossler's interests be within the zone of interests encompassed by the MVRA. Permitting Hossler's appeal in this case will provide victims with unprecedented ability to intervene in *criminal* restitution orders, even if the effect of their intervention is to the detriment of other victims and to the desire for finality and certainty in the restitution process that was articulated by the drafters of the MVRA. Because Hossler's interests are so "inconsistent with the purposes implicit in the [MVRA] that it cannot reasonably be assumed that Congress intended to permit" this lawsuit, I would dismiss her appeal for lack of standing and decline to address whether the district court properly released her judgment lien.